[No. 1419.]

HIRAM W. ROBERTS, PLAINTIFF AND RESPONDENT, *v.* H. H. GREER AND W. H. CAUGHLIN, AS SHERIFF OF WASHOE COUNTY, DEFENDANTS AND APPELLANTS.

(Syllabus by BIGELOW, C. J.)

HOMESTEAD—NOT LOST BY DEATH OF WIFE—A homestead duly filed upon while husband and wife were residing thereon, remains a homestead in his hands after her death, and as such is exempt from levy and sale for his debts where he continues to reside upon it, although he has no children or other dependent relatives residing with him.

APPEAL from judgment and order denying motion for new trial, from District Court, Washoe county; *A. E. Cheney,* District Judge:

On December 16, 1879, the plaintiff and Johanna Roberts, his wife, were living upon and occupying the lands in controversy in this action, which were community property. On that day Johanna duly filed a declaration of homestead thereon, and they continued to live on the premises until October 25, 1893, when she died. Since then the plaintiff has lived upon and occupied them. They had no children, nor has the plaintiff any dependent relatives living with him. There has apparently been no administration upon the wife's estate. The premises do not exceed $5,000 in value. On July 25, 1893, the defendant Greer obtained a judgment against plaintiff, upon which, on October 27, 1893, an execution duly issued. Under this writ the lands were sold by defendant Caughlin, as sheriff of Washoe county, to defendant Greer, and it is alleged that upon the expiration of the period of redemption he intends to execute a sheriff's deed for the same. Judgment was rendered in the plaintiff's favor, to the effect that the sale was void, and enjoining the sheriff from executing any deed thereunder. The defendants appeal.

*J. L. Wines* and *Torreyson & Summerfield,* for Appellants:

This is an action instituted by respondent to enjoin the sheriff of Washoe county from executing a sheriff's deed upon sale formally made by him, and for relief in the way of having such sale and the certificate issued thereunder decreed null and void.

Respondent is, and has been for several years, the owner of the legal title to the lands described in the record and which were sold by said sheriff in satisfaction of a judgment in favor of appellants and against the respondent Roberts.

The question is presented as to whether or not the homestead character of the property continued after the death of the wife, and after the surviving husband ceased to be the head of the family, or whether the judgment creditors of Roberts had a legal right to subject such property to the payment of their judgment.

The court below held that notwithstanding the fact that Roberts had ceased to be the head of the family the homestead character was still impressed upon these lands, and that a sale by the sheriff was unwarranted and void.

The first inquiry is, what was the intention of the legislature as expressed in the statute on this subject? The first act of the legislature on this subject (Laws 1861, p. 24, sec. 9) provides that "the homestead and other property exempt from forced sale upon the death of the head of the family shall be set apart by the probate court for the benefit of the surviving wife and his own legitimate children; *provided*, that the exemption as provided in this section shall not extend to unmarried persons, except when they have charge of minor brothers or sisters, or both, or brother's or sister's minor children, or a mother or unmarried sisters living in the house with them." The provision in this section, where it says "that the exemption shall not extend to unmarried persons," refers to a period of time when the exemption is claimed or asserted, and not to the time when the declaration of homestead is filed. The evident intention of this section was that the legislature did not intend to extend the benefits of the homestead law to any one who was unmarried at the time he asserted and alleged homestead right, even although such person may have been the head of a family at the time the homestead declaration was filed. It is clear, therefore, that it was not intended to exempt the homestead from forced sale in cases where the judgment debtor had no one depending on him for support. It would scarcely be claimed that, if the above statute was still in force in this state, the respondent in this case would be entitled to the relief which he now seeks. It therefore becomes pertinent to inquire

whether or not the legislature has changed the law upon this subject since the enactment of the section. We find that the next action upon the part of the legislature resulted in the passage of the act of March 6, Stats. 1864–65, p. 225. Section 4 of that act provides "the homestead and other property exempt from forced sale shall, upon the death of either husband or wife, be set apart by the court for the benefit of the surviving husband or wife, and his or her legitimate children; and in the event of there being no survivor or legitimate children of either husband or wife, then the property shall be subject to the payment of their debts; *provided,* that the exemption provided for in this act shall not extend to unmarried persons except when they have the care and maintenance of minor brothers or sisters, or both, or brother's or sister's minor children, or a father or mother, or both, or grandparents or unmarried sisters living in the house with them." While the first act quoted speaks of the death of the head of the family, and the second act speaks of the death of either husband or wife, the second section quoted also says that in the event of there being no survivor or legitimate children of either husband or wife, then the property shall be subject to the payment of their debts. We might concede that if section 4, act of 1865, had been omitted, then in this case the property would not be liable to the payment of the judgment in question, for the reason that such property was only made liable to the payment of debts in cases where there was no surviving husband or wife or children. There being a survivor, however, in this case, it might, with some reason be claimed that the homestead property was not liable to the payment of debts. The proviso in section 4 of the act of 1865 is substantially the same as in section 9 of the act of 1861.

The purposes of a proviso in a legislative enactment is to modify, limit, or restrict the operation of the general provision. A proviso is said to be in the nature of an exeception or reservation, and takes certain cases out of the operation of the general statute, which otherwise would be included within it. Therefore, the proviso in the act of 1865 declares that the exemption claimed or asserted shall not extend to unmarried persons, unless they have some of the persons mentioned in the statute under their care or support. In other words the exemption can only be asserted or claimed

by the head of the family. The courts have frequently held that a head of a family need not necessarily be a married person. As before stated the word exemption has reference to and provides for the assertion of a right or privilege at a time when an effort is being made by virtue of legal process to subject certain property to the payment of debts. While a person may legally file a declaration of homestead, and may maintain certain homestead rights, so long as certain relations or conditions exist, as soon as these relations or conditions have ceased the exemption can no longer be successfully asserted, or, in other words, the exemption shall no longer extend to the homestead property.

Was it not the intention of the legislature to provide that so long as the debtor was the head of a family, or had persons depending upon him for support, he could assert a homestead right, and is it not equally clear that as soon as he ceased to occupy such a position, ceasing to be the head of a family, and having no one dependent upon him, he should no longer be entitled to exempt his property from forced sale precisely as though he had attempted to assert such homestead right, although never occupying the position, which entitles him to claim such exemption?

The spirit of the homestead law is that the judgment debtor shall be entitled to claim a homestead for the benefit and in the interest of those dependent upon him.

Subsequent to the passage of the act of 1865 some doubts were expressed by the courts or by the profession as to the meaning and scope of the proviso contained in section 4 of that act. It will be remembered that we have claimed under both the act of 1861 and 1865 that the conditions and circumstances surrounding the debtor at the time he files his declaration of homestead do not determine his rights in this regard. A change in conditions and surroundings will result in taking away or defeating a right which previously existed.

The next act of the legislature of this state, and the one in force during all the times mentioned in the record in this case, and which is controlling upon the question now presented, is the act of March 17, 1879, Stats. 1879, p. 140. Section 2 of that act re-enacts substantially section 4 of the act of 1865. The act of 1879 quotes the proviso the

same as in 1865 and then adds the following: "And in all such cases the exemption shall cease upon the cessation of the terms upon which it was granted." It will be conceded that the right to claim an exemption is created, given or granted by the filing of a declaration of homestead. The conditions and terms upon which a homestead right is created, given or granted are that the person filing such declaration of homestead is the head of a family or is, at the time of filing such declaration, residing with the family, or with certain persons, or a person under their care or maintenance. (Sec. 1, act of 1879.)

The terms mentioned in the new proviso just quoted are the requirements which must exist and be made to appear in the declaration of homestead. If these terms have ceased to exist, such, for instance, as the party who had previously been in a position to file and had filed a declaration of homestead at the time the exemption is claimed, then, by the express provision of this proviso, the exemption, or the right to claim one, shall cease.

The statue of 1879 makes prominent two facts: First, that the right to claim as exempt from forced sale a homestead, and, second, that this right may cease to exist, or may be taken away from the debtor. The statute says in plain terms that the exemption shall cease upon the cessation of the terms upon which it (the exemption) is granted. It will be seen that the idea is kept prominently in view in all statutes quoted that only a debtor who has a family of some character, or consisting of some of the persons mentioned in the statute, shall be entitled to claim an exemption. That which alters the situation and condition of the debtor is a change in the terms and conditions surrounding him at the time the homestead was created.

At one time the state of California had a statute very much like ours, prior to 1879. In the case of *Revalk* v. *Kraemer*, 11 Cal. 66, the supreme court of that state uses this language, at page 73: " This question may be properly considered under two aspects: (1) Whether the privilege of the homestead ceases, when the party ceases to be the head of a family. (2) Conceding that it does, in what manner would the title inure to the benefit of the creditors? The leading idea upon which the constitution and statute are

both predicated is the protection of the family.    To carry out
this intent, the homestead of the head of the family is pro-
tected from forced sale.    Any individual of either sex may
be the head of a family.    It is not necessary that the head
of a family should be a married person.    But, unless the
person is the head of a family, the right of homestead can-
not exist.    And cannot the same person at one time be the
head of a family and not at another?    And if'the privilege is
an incident to a certain state and that state itself ceases, why
should not the incident fall with it?    At one time in Cali-
'fornia the law was that the owner of a homestead, the hus-
band for instance, could convey the homestead without the
wife joining in the deed.    The existence of the homestead
simply resulted in preventing the purchaser from obtaining
possession under his deed.    As soon as the homestead ceased
to exist, the purchaser could maintain an action of ejectment
under his deed, although at the time the deed was executed
the premises conveyed constituted a homestead and the wife
did not join in its execution."    (*Gee* v. *Moore*, 14 Cal. 472;
10 Fed. Rep. 601; 17 Fed. Rep. 887; 30 Fed. Rep. 886; 6 N.
W. Rep. 40; 31 Cal. 526, 536, 537.)

Since these decisions in California the statute in that state
has been changed so that at this time, in the event of the
death of either husband or wife, the title to the homestead
vests absolutely in the survivor, and shall be held by the
survivor, as fully and amply as the same was held by them
or either of them immediately preceding the death of the
deceased, and the homestead shall not be subject to the pay-
ment of any debts or liabilities of the husband or wife, or
either of them, previous to or at the time of the death of
such husband or wife.    (*Watson* v. *Creditor*, 58 Cal. 556, 557;
*Tyrrell* v. *Baldwin*, 78 Cal. 470, 473.)

In the case of the *Estate of David Walley*, 11 Nev. 260,
this court discussed, at some length, and pointed out the dis-
tinction between a homestead created under the homestead
law, by the filing of a declaration, and a homestead set
apart by the court during the administration of an estate,
and also discussed the meaning and effect of the proviso con-
tained in section 4 of the act of 1865.    This decision was
rendered prior to 1879, and the position taken in it and the
doubts raised by the contention of counsel in that case no

doubt prompted the legislature to add the proviso found in section 2 of the act of 1879.

While it will be conceded by appellants in this case that the respondent Roberts could hold a homestead in question, as against the personal and individual debts of his deceased wife, the legal title of the property being in the survivor, our contention is that the survivor cannot in this case claim an exemption as against his own personal, individual debts. This court in the case just cited holds that the exemption, the one in favor of the survivor as against his own debts, is excluded by the proviso.

We admit that certain language has been used in the act of 1879 which leads to some doubt touching its correct construction, but, when the whole section is taken in consideration and full meaning given to all of its terms, it seems that it is made to appear that the legislature did not intend for all times to exempt the lands of the owner from forced sale.

*William Webster* and *Goodwin & Dodge,* for Respondent:

The only question presented is: Did the homestead right and exemption survive to the plaintiff after the death of his wife? In discussing this question we do not deem an examination of the early territorial statutes material. Section 30, article IV. of the constitution declares that: "A homestead, as provided by law, shall be exempt from forced sale under any process of law." The statute declares to the same effect (Gen. Stats., sec. 539). This section further provides that in a case like the one at bar "from and after the filing for record of said declaration, the husband and wife shall be deemed to hold said homestead as joint tenants. See 1 Blackstone, book 2, chap. 12, page 181.

The law contemplates three classes of homesteads: First —One initiated by the husband and wife, or either of them, upon common property. Second—One initiated by the husband and wife jointly, upon the separate property of one of the spouses. Third—One instituted by an unmarried person, who at the time of selection is at the head of a family. As to the first, it is held by the spouses in joint tenancy. The second is not so held, but is made to terminte at the death of one of the spouses, and the third is made to terminate where

the condition upon which it is granted ceases; that is, when the unmarried person ceases to be the head of a family. The first two depend solely upon the marital relation. It is in no wise made to depend upon the fact that there are children or other members of the family, and if the homestead be upon the common property, it descends absolutely to the survivor, it being held in the nature of a joint tenancy, all of the incidents peculiar to the estate thus created and existing, necessarily continue to the surviving spouse. That there should be no doubt on this question, the statute further provided in the same section: "That if the property declared upon as a homestead be the separate property of either spouse, and shall retain its character of separate property until the death of one or the other of such spouses, then and in that event the homestead right shall cease in and upon said property." This, under the well-settled rule that "*Expressio unius est exclusio alterius,*" is equivalent to declaring that when the homestead, as in this case, is carved out of the common property, the homestead right shall not cease upon the death of either of the spouses. The learned counsel for appellants founds his argument against this plain purpose of the law upon section 542 of the general laws relating to the subject, but this cannot avail him. Should we concede that this section was intended to vest any particular estate in the persons mentioned, still it uses language confirmatory of the right in respondent for what we contend. It says that the homestead exemption " shall not extend to unmarried persons except when they have the care and maintenance of minor brothers or sisters, or both, or of a brother's or sister's minor children, or of a father or mother, or of grandparents, or of unmarried sisters living in the house with them; and in all such cases the exemption shall cease upon the cessation of the terms upon which it is granted." Under the familiar rule just above cited, here we find further confirmation of the intention of the lawmakers, that the homestead of the husband and wife upon community property shall, with all its incidents, descend to the surviving spouse. The section further emphasizes this in a subsequent proviso, which says: "That no exemption to the surviving spouse shall be allowed in cases where the homestead declaration has been filed upon the *separate* property of either husband or wife."

.But this provision of the law has no application to the real question at issue here. It is a provision regulating the procedure of courts in the administration of estates. (*Smith* v. *Shrieves*, 13 Nev. 306, 326.)

This court expressly held in *Estate of David Walley*, 11 Nev. 260, that "a childless widow" was embraced within the meaning of the words "family of the deceased." Neither the constitution nor the laws suggest that the spouses hold the homestead right by any different tenure. Their rights are equal whilst living, and the right of survivorship is the same. The husband, as the surviving spouse, has no more, nor no less, rights to the homestead than the wife, as the survivor, would have. These laws have a humane object and demand a liberal construction. (Thompson on Homesteads and Exemptions, sec. 7.)

In a case in Massachusetts the husband and wife acquired a homestead. They had one son; the wife died and the son became of age and left his father; the latter continued to reside on the premises. On the creditors seeking to apply it to the satisfaction of their demands, the court held the homestead exempt. (*Silloway* v. *Brown*, 12 Allen, 34; *Doyle* v. *Colum*, 6 Allen, 71.)

The case of *Revalk* v. *Kraemer*, from which counsel quote extensively, is found in the 8th California, at page 66, not in the 11th as cited by them.

As the constitution and laws of California then stood, and as is argued in that case, it was the "heads of families" alone who were entitled to a homestead. These were subsequently changed to conform more fully to the humane purposes of the provisions, and now, as in this state, the right is made to depend mainly upon the marital relation, and is subordinate to what is termed the heads of families. The rule in that case no longer obtains in California, nor in but few states in the union. In *Tyrrell* v. *Baldwin*, 78 Cal. 475, the court says: "The death of one of the spouses does not alter in any way the estate or title of the homestead."

*In Re Atterman*, 80 Cal. 209, the question arose as to the rights of the surviving husband in the homestead, and the court approved the doctrine as above stated in *Tyrrell* v. *Baldwin*, and says: " * * * The death of one of the

spouses did not alter in any way the estate or character of the homestead."

See also *Bretten* v. *Fox*, 100 Mass. 234; *Kimbrell* v. *Willis*, 97 Ill. 494; *Blum* v. *Gains*, 57 Tex. 110; *Stewart* v. *Brand*, 23 Iowa, 477; *Meader* v. *Place*, 43 N. H. 307; *Town* v. *Rumsey*, 35 Pac. Rep. 1025.

We do not deem a further citation of authorities necessary to the support of the judgment in this case. The opinion of the learned judge, upon which the judgment in this case is made to rest, is incorporated in the transcript on appeal, and replete with reason and authority therefor.

By the Court, BIGELOW, C. J.:

The question for decision in this case is whether upon the death of the wife the homestead of the parties upon community property remains in the hands of the childless husband as a homestead, and as such exempt from levy and sale for his debts. The answer depends upon the construction of our homestead law.

The first section of the act, as amended in 1879 (Stats. 1879, p. 140; Gen. Stats., sec. 539), provides that the husband and wife, or either of them, or other head of a family, may make and file a declaration of homestead, and that thereafter "the husband and wife shall be deemed to hold said homestead as joint tenants; *provided,* that if the property declared upon as a homestead be the separate property of either spouse, both must join in the execution and acknowledgment of the declaration; and if such property shall retain its character of separate property until the death of one or the other of such spouses, then and in that event the homestead right shall cease in and upon such property, and the same belong to the party (or his or her heirs) to whom it belonged when filed upon as a homstead.

Section 4 of the act (Stats. 1879, p. 141; Gen. Stats., sec. 542) provides as follows: "The homestead and all other property exempt by law from sale under execution, shall, upon the death of either spouse, be set apart by the court as the sole property of the surviving spouse, for his or her benefit, and that of his or her legitimate child or children; and in the event of there being no surviving spouse, or legitimate child or children of either, then the property shall be

subject to administration, and to the payment of his or her
debts or liabilities; *provided,* that the exemption made by
this act and the act of which it is amendatory shall not
extend to unmarried persons except when they have the care
and maintenance of minor brothers or sisters, or both, or of
a brother's or sister's minor children, or of a father or mother,
or of grandparents, or unmarried sisters living in the house
with them; and in all such cases the exemption shall cease
upon the cessation of the terms upon which it is granted;
and upon the death of such unmarried person the property
shall descend to his or her heirs, as in other cases, unless dis-
posed of by will, subject to administration and the payment
of debts and liabilities."

. It may be admitted that the statute is by no means clear
upon the point involved in this action.   Generally it is very
crude, and many of its provisions conflicting to the last
degree.   Through this maze the courts must thread their
way as best they may, and in endeavoring to carry out
what appears to be the spirit of the law their decisions must
necessarily, sometimes, seem to fall but little short of judi-
cial legislation.   The language used by the supreme court of
Texas is very applicable to the situation here.   It said:
" The homestead estate was one unknown to the common
law, and is of very recent origin, having been created by
statute and under the construction given by the courts.   As
might have been reasonably expected in the legislation upon
a new subject matter, the statutes did not in express terms
anticipate and provide for every possible phase of the ques-
tion, and the courts have been called upon to construe and
apply the law to new cases as they would arise.   This con-
struction has almost invariably been a liberal one, and
designed to carry out the beneficent purposes and intention
of the legislature.   This court has repeatedly called atten-
tion to the necessity of more specific legislation on the sub-
ject, and in the absence of it has been forced to decide cases
not so much from the letter of the law as from its evident
spirit and intention.   These decisions have not been made in
a spirit of judicial legislation, but in an anxious desire and
effort, by analogy and otherwise, to arrive at a proper con-
struction of the constitution and laws."   (*Blum* v. *Gaines,*
57 Tex. 119, 121.)   Viewing the law in the liberal spirit

here indicated, it seems to us there is more reason for concluding the legislature intended the homestead in the hands of the surviving husband to be exempt from execution than the contrary.

The constitution (sec. 30, art. IV.) provides that " a homestead, as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife when that relation exists." Under this provision the conditions upon which a homestead shall be granted have been left entirely to the legislature. While that body has seen fit to limit the right to initiate a homestead to married persons, and to those who are heads of familes, there seems nothing to prevent its being extended to others who are not in either situation. If it could do this, it could extend it to some classes and not to others. It could provide that a homestead once created should continue under some circumstances, and not under others.

The first section of the act quoted above provides that " the husband and wife shall be deemed to hold said homestead as joint tenants." As used in this statute, the word " homestead " may be defined as meaning not only the property—the real estate—occupied as the home, but also the right to have it exempted from levy and forced sale. In case of ·a husband and wife, the homestead is a home that cannot be taken from the occupiers for the debts of either or both of the spouses. It is this " homestead " that they are to hold as joint tenants. One of the fundamental incidents of a joint tenancy is the right of survivorship. If, then, when the legislature provided that they should hold the homestead as joint tenants, if they understood at all the meaning of the language used, as we must presume they did, they must have meant that the survivor should not only succeed to the property which constituted the homestead, but also to the right to hold it exempt from forced sale. If not, they would not hold the " homestead " as joint tenants, but merely the property covered by the homestead right.

It will be noticed, further, that the same section also provides that where the property declared upon as a homestead is the separate property of either spouse, and shall remain such until the death of one of the parties, the " homestead right "

in such property shall thereupon cease.    From this, upon the principle that what is enumerated excludes what is not, it seems quite clear that the legislature must have intended that in case of community property this "homestead right" should not cease upon the death of one of them.

In section 4 it is again the "homestead" that upon the death of either spouse is to be set apart as the sole property of the survivor, and it is further provided that, in case there is no surviving spouse nor children, the "property" is to become subject to administration.    This shows that the attention of the legislature must have been particularly called to the fact that there was a distinction between the homestead and the property upon which the homestead right rested, and that they did not use those terms indiscriminately.

In *Tyrrell* v. *Baldwin*, 78 Cal. 470, 476, speaking of a provision of the code, the court said:    "That section provides that 'the court may (shall) of its own motion, or on petition therefor, set apart for the use of the surviving husband or wife, or in case of his or her death, to the minor children of the decedent, all the property exempt from execution, including the homestead selected, designated and recorded,' etc.    Here the quality of the exemption is clearly impressed upon the homestead set aside.    It would not be a homestead, it would be wanting in the main feature which recommends it to favor, if, upon the death of the head of the family, it were no longer protected by the law of exemption.    There is greater necessity for such protection after the death of one of the spouses than before."

An argument leading to the same result may also be drawn from the provision that, where there is no surviving spouse nor children, the property shall become subject to administration and distribution to the heirs.    Unless in this provision the legislature intended to provide for a case where both husband and wife died at the same instant, which is hardly supposable, it must have contemplated that there would be a time during which the homestead would continue to exist, when but one of them would be alive, and it is only after the death of the survivor that the homestead property is to be distributed to the heirs.    In *Smith* v. *Shrieves*, 13 Nev. 303, this court decided that, upon the death of one of the spouses, the children took no interest in the homestead.

If that decision is correct, then the fact that there are or are not children cannot alter the estate that comes to the surviving husband or wife. If it would not, then no case can be thought of where the homestead would continue after the death of one of the spouses, if it would not here.

Defendants' counsel, admitting what is really beyond controversy, that upon the death of the wife the title to the homestead property vested absolutely in the husband, found their argument that it is not thereafter exempt from levy and sale for his debts principally upon the language of the first proviso of section 4, where it directs that "in all such cases the exemption shall cease upon the cessation of the terms upon which it is granted." But the view we take of this provision is that it really strengthens the opposite position. We are of the opinion that this proviso is simply a limitation upon the first section, wherein that section provides for a homestead for an unmarried person who is the head of a family. Without this limitation the first section might be construed to apply to cases where an unmarried person had living with him others who were not relatives. This was carefully guarded against—so carefully, in fact, that it seems to even prevent a surviving husband or wife with dependent children from ever securing a homestead in their own right after the death of the other; and then the clause in question was inserted for the purpose of providing for the termination of the unmarried persons' homestead when they no longer have dependent relatives living with them. This, we think, is all that was intended by this clause, and the care of the legislature to provide for the termination of such a homestead may be considered an indication that they did not intend one granted to a married person to terminate upon the cessation of the terms upon which it was granted.

We are aware that in *Estate of Walley*, 11 Nev. 260, 266, the majority of the court expressed the opinion that the construction of this statute contended for by defendants' counsel was correct, but the point was not involved in that case, and, of course, was not decided. What was there said was stated only by way of argument as to the proper construction to be placed upon another statute, and probably did not receive the consideration usually given to points actually decided. Since then, in *Smith* v. *Shrieves, supra,* the court

has held that children take no interest in a homestead; and if as heretofore remarked, this was correctly decided, then the existence or non-existence of children cuts no figure in the right to a homestead, and, if a childless widow or widower cannot have one, then such a person with children cannot do so. But certainly the legislature cannot have deliberately intended to exclude a widow, or a widower, with children, from all benefit of the homestead act, and yet, as we have seen, if they are not granted a homestead by virtue of their survivorship, they cannot afterwards secure one.

We think that stronger arguments against the view we have taken may be drawn from the general policy of the homestead act, which seems to aim only at securing a homestead for a family, and not for individuals, from the fact mentioned by Justice Beatty in his dissenting opinion in *Smith* v. *Shrieves, supra,* that, when our legislature adopted our law of 1865, they apparently preferred to follow the California act of 1860, which, at best, is not clear upon this point, in preference to the California amendment of 1862, which is clear and definite that the homestead in the hands of the surviving spouse is exempt from all debts incurred prior to the death of the other; from the fact that the legislature clearly did not intend that a homestead in the separate property of either of the spouses should continue after the death of one, and consequently, as community property virtually becomes separate property after such death, no greater reason exists for granting a homestead in that than exists in regard to property which has always been separate; from the fact that no provision has been made for abandoning such a homestead, and under the provisions of section 2, taken literally, if a homestead exists at all to a surviving husband or wife, it never can be abandoned, and, as this cannot have been intended, the legislature must have intended that no such homestead should exist at all.

But strong as some of these reasons, and perhaps others that could be suggested, are, we consider those on the other side stronger still, and consequently hold that view to be the law.

While not strictly in point, yet as to some extent supporting the views here expressed, and showing that other courts

upon statutes more or less like our own have come to the same conclusion, we cite *Town* v. *Rumsey*, 35 Pac. 1025; *Ellis* v. *Davis*, 90 Ky. 183; *Keyes* v. *Cyrus*, 100 Cal. 322; *Silloway* v. *Brown*, 12 Allen, 34; *Kimbrel* v. *Willis*, 97 Ill. 494; *Blum* v. *Gaines*, 57 Tex. 110; Wap. Homest. 82, *et seq.*

The judgment is affirmed.