In the Matter of AMERICAN BUSINESS MACHINES, INC., a Nevada Corporation; James C. Edwards, a/k/a J. C. Edwards; and Constance J. Edwards, Bankrupts.

Bankruptcy Nos. BK–LV 78–782 to BK–LV 78–784.

United States Bankruptcy Court, Nevada.

Sept. 16, 1980.

John M. Sacco, of Rogers, Monsey, Woodbury & Berggreen, Las Vegas, Nev., for bankrupts.

B. Mahlon Brown, U. S. Atty., and William C. Turner, Asst. U. S. Atty., Las Vegas, Nev., for the United States Internal Revenue Service.

Peter F. Koppe, Las Vegas, Nev., trustee.

## MEMORANDUM OPINION

LLOYD D. GEORGE, Bankruptcy Judge.

### I. LITIGATIONAL BACKGROUND

Pursuant to an auction of real property held on April 7, 1979, the Trustee in the above–entitled matter now finds himself in possession of a sum slightly in excess of $20,000. Upon the ·whole of this amount, the Bankrupts, James C. and Constance J. Edwards, claim a homestead right vis–a–vis all general creditors and, hence, against the Trustee, in his representative capacity, as well.[1] In response, the Trustee maintains that the extent of the Bankrupts' homestead should be measured under the pre–July 1, 1975 Nevada homestead statute, which set a maximum value limit on this right of $10,000. To cloud matters further, the United States Internal Revenue Service has made a demand upon the Trustee as to one–half of any sum eventually deemed to constitute homesteaded property under Nevada law. Consequently, in their formal objection to the Trustee's Report of Exempt Property, the Bankrupts question both the $10,000 homestead figure set forth therein and the Trustee's decision to withhold from the Bankrupts the proceeds of the sale of their home pending a resolution of the I.R.S. demand.

### II. THE HOMESTEAD VALUATION ISSUE

Based upon the Court's recent holding in the La Mothe case, BK–LV 77–262, BK–LV 77–263, the Trustee must be found to be without authority under Section 70 of the Bankruptcy Act to assert any homestead exemption figure other than that which was in force as to creditors whose claims arose on the date of the filing of the Bankrupts' petition in this proceeding.[2] And, since the obligation allegedly owed by the Bankrupt to the United States Internal Revenue Service apparently arose after July 1, 1975, no question is raised as to the ability of this governmental entity to make an attack of its own upon the Nevada homestead statutes under the impairment of contracts clause of the United States Constitution. See U.S.Const., Art. 1, Sec. 10.

### III. THE TAX LIEN ISSUE

The Government nonetheless has another potent instrument for reaching Mr. Edwards' portion of the homestead exemption claimed by him and his wife.[3] In this regard, a major question has been interposed as to the degree to which a state–created homestead right may adversely affect

---

1. The Trustee's sale of the Edwards' homesteaded property appears to have been conducted with the consent of all of the parties here involved.

2. The Court, in La Mothe, held that neither Section 70(c) nor Section 70(e) of the Act empowered the Trustee to assert the rights of actual pre–petition creditors in utilizing the lower exemption amount in effect when the claims of such actual creditors arose. See Lewis v. Manufacturers National Bank of Detroit, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961).

3. In the case at bar, only Mr. Edwards has been charged under Section 941 of the Internal Revenue Code for employees' income taxes which he failed to collect and/or pay over to the Internal Revenue Service.

a federal tax lien in its attachment and/or execution.[4]

### A. The Hershberger "Property Interest" Test

Counsel seem to be in substantial agreement as to the general formula through which this Court may reach a proper result on this issue. State exemption laws, it would appear, have no effect upon a lawful levy based upon a correctly–filed federal tax lien. 26 U.S.C. § 6334(c) (1976). Such a lien, however, may only attach to property rights of the person against whom the initial tax assessment was made, and not against the rights of any co–owner of the subject property. 26 U.S.C. § 6321 (1976). Therefore, the question must be asked as to the circumstances under which the real property interest attached by a Section 6321 lien can be controlled by non–alienation and anti–execution limitations placed by state law in protection of rights of another interested party. With respect to state homestead laws, for example, some Courts have maintained that where such statutes create something in the nature of a "property interest" in one spouse which would preclude normal alienation by the other spouse without the voluntary consent of the first, the courts may allow attachment of a tax lien, but prevent any execution thereon pursuant to 26 U.S.C. § 7403–at least while the non–taxpayer spouse remains in possession of the federally–attached real property. *See, e. g., United States v. Hershberger*, 475 F.2d 677 (10th Cir. 1973); *Jones v. Kemp*, 144 F.2d 478 (10th Cir. 1944).

The Government has indicated through its memoranda that it believes the legal position set forth in these cases to be basically sound, citing in support thereof a 1974 North Carolina Law Review piece analyzing the *Hershberger* decision. Note, Federal Tax Lien–Is It Effective Against a State Homestead Exemption?, 52 N.C.L.Rev. 695 (1974). It would now depart from the results reached in the *Hershberger* and *Jones* cases, however, by noting that in the instant proceeding the wife's homestead property has already been sold and that no reason remains for sustaining any non–alienation rights she may have had as to the real property, itself. Furthermore, the Government argues that Nevada's homestead statute is of the "exemption," rather than the "property interest" variety, thus making the rationale of the *Hershberger* and *Jones* cases inapplicable in the present setting.

If the Court were now to rely upon the reasoning of the cited decisions, it would be prone to find against the Government on its second point, but to agree that the impact of these cases has been severely weakened by the Trustee's sale. The operative language of Article IV, Section 30 of the Nevada Constitution is virtually identical to that of the Kansas Constitution, upon which the United States Court of Appeals for the Tenth Circuit relied in the *Hershberger* case. This wording is quite different from the homestead provisions of the California Constitution, which have been repeatedly interpreted as providing only an exemption from execution, *Gerlach v. Copeland*, 212 Cal. 758, 300 P. 818 (1931), *Smith v. Bangham*, 156 Cal. 359, 104 P. 689 (1909), and thus no protection from levy under a federal tax lien. *Shaw v. United States*, 331 F.2d 493 (9th Cir. 1964).[5]

---

4. The Bankrupts also raise the timeliness of what they perceive to be the Government's objection to the Trustee's Report of Exempt Property. The Government, however, has apparently made no objection to the Trustee's Report, claiming only that one–half of any sum deemed to be unreachable by general creditors under Nevada's homestead laws, is subject to the federal tax lien against Mr. Edwards' property.

5. Article IV, Section 30, of the Nevada Constitution reads:

"A homestead as provided by law, shall be exempt from forced sale under any process of law, shall not be alienated without the joint consent of husband and wife when that relation exists; but no property shall be exempt from sale for taxes or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon; Provided, the provisions of this Section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife, and laws shall be enacted providing for the recording

Moreover, Nevada case law has carefully distinguished between common law property interests and the unique interest in real property created under the Nevada Constitution and Nevada statutory law by the filing of a homestead declaration. *In re Cook's Estate*, 34 Nev. 217, 117 P. 27 (1911); *Adams v. Baker*, 24 Nev. 162, 51 P. 252 (1897); *Roberts v. Greer*, 22 Nev. 318, 40 P. 6 (1895); *Smith v. Shrieves*, 13 Nev. 303 (1878). Thus, although the Government argues that under N.R.S. 115.020(3) [6] the filing of a homestead declaration creates nothing more than a joint tenancy in the subject real property, the early Nevada Supreme Court case of *Roberts v. Greer, supra*, makes it clear that the similarly–worded predecessor of this statute provided a joint tenancy in the *homestead,* itself, and not in the underlying property. *Id.* at 329, 40 P. at 7. This "homestead" was ostensibly understood by the *Roberts* court to be an intangible identity entirely distinct from the real property which it affected; in many ways it was deemed a legal "right," apart from that of simple ownership, *in*

that property. *Id.* at 330, 40 P. at 7. Writing at a time in which metaphysical concepts were still imbued by legal thinkers with a certain reality, in themselves, the Court supposes that the *Roberts* court was attempting to grant somewhat of the same dignity to this homestead right which early English lawmakers had bestowed upon the various estates in land.[7]

If the Court can find any defensible differentiation between a "property interest" homestead statute and a mere homestead "exemption" law, it would have to be in this fictional bestowal of a right beyond the simple ability of the homestead declarant to raise a shield of *state* power. (The federal sword has proven far too adept at piercing the inadequate lorication provided by such constitutionally–subordinated paladins). The interest of the homestead declarant must be recognized as a right to property which, in itself, may parry the divisive blows of the federal taxing authority. It must be the type of interest upon which a Fifth Amendment "taking" argument can be asserted by the homestead owners. The

---

of such homestead within the County in which the same shall be situated."
Article 15, Section 9, of the Kansas Constitution provides:
"A homestead to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. *Provided,* the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife . . .."
The only visible difference between these sections would seem to be in the Kansas framers' choice not to leave the *extent* of the homestead up to later legislative delineation. On the other hand, Article XX, Section 1.5, of the California Constitution issues a simple mandate that
"[t]he Legislature shall protect, by law, from forced sale a certain portion of the homestead and other property of all heads of families."

Formerly at Cal.Const., Art. XVII, Sec. 1. While the homestead protection flows directly from the Nevada and Kansas Constitutions, their California counterpart leaves such protection to the state legislature, along with the defense of "other property" of family heads.

6. N.R.S. 115.020(3) reads as follows:
"The [homestead] declaration shall be signed by the person or persons making the same, and acknowledged and recorded as conveyances affecting real property are required to be acknowledged and recorded. From and after the filing for record of the declaration, the husband and wife shall be deemed to hold the *homestead* as joint tenants."
(Emphasis supplied).

7. Even earlier Nevada case law favorably cites California cases which speak in terms of the homestead "estate," *see Smith v. Shrieves, supra* at 310, though the present impact of those California cases has been severely deflected by the later "exemption" analysis which has typified court holdings with respect to the homestead laws of that state. *Cf. United States v. Hershberger, supra* at 680 (citing *Helm v. Helm,* 11 Kan. 19 (1873), which emphasized the "estate" of the wife in the homestead).

*Roberts* court seems to have understood Nevada law as endowing the homestead declarant with this sort of *"sui juris* status.[8]

Nevertheless, even this homestead "property interest" has not been without its limitations in Nevada. Once the real property in question is sold, for example, the homestead right arguably alters its status from that of a special interest in real property to being a simple protection against execution or unilateral alienation. Hence, N.R.S. 115.050(3) allows that upon execution on real property wherein the equity of a homesteading debtor is in excess of the statutory limit, the amount of that limit will be paid to the debtor and his or her spouse "and it shall possess all the *protection* against legal process and voluntary disposition of the husband *as were* the original homestead premises." (Emphasis supplied). By giving such proceeds a *similar* protection to that granted the "homestead premises," the legislature seems to imply that the proceeds, themselves, are not "homestead" property. Otherwise, why not just state that the homestead continues in such proceeds? And, why is no mention made in the Nevada homestead statute as to the status of the proceeds of a *voluntary* sale of the homestead premises? *Compare* Cal.Civ.Code § 1265 (West).

### B. The Overman Test

Having entertained these troublesome queries, however, the Court sees no reason to lay them to final rest. In *United States v. Overman,* 424 F.2d 1142 (9th Cir. 1970), the United States Court of Appeals for the Ninth Circuit, upon which this Court must rely for guidance, refused to draw any meaningful distinction, in effect, between

"rights to property" community property laws and simple "exemption" statutes. Writing for the court in *Overman,* Judge Shirley M. Hufstedler put aside the argument of a taxpayer spouse that the whole of the property in question was protected from federal tax lien attachment or execution because of his wife's community property interest therein. The taxpayer had argued "that the rule [was] one of property law, and create[d] a limitation on the extent and quality of his *ownership* rights under state law." *Id.* at 1145 (emphasis supplied). Therefore, as the Bankrupts here advocate with respect to the homestead limitation on alienation, the taxpayer in *Overman* maintained that the protections accruing to the wife's community property interest under state law were such a part of that interest as to preclude their avoidance by the Internal Revenue Service.

In response to this position and to another theory of the taxpayer that the community was an entity distinct from either of its members, Judge Hufstedler bifurcated the taxpayer spouse's community property interest into two elements. The first was the "community" interest, itself. Here, Judge Hufstedler applied a similar form of analysis to that employed by the Nevada Supreme Court in *Roberts v. Greer* to differentiate between the taxpayer's interest in the "community" and that which he held in the real property owned in community with his wife. Although holding that the underlying property was not subject to any direct interest of the husband, himself, Judge Hufstedler went on to note that the "community" interest had some value in and of itself:

"Early Washington cases suggest that neither spouse has title to the assets of

---

**8.** In *Roberts,* the question raised was whether the homestead right would survive the death of one spouse, in the absence of specific statutory language creating such survival protection. As previously stated, the Nevada Supreme Court ruled that the state legislature had clearly distinguished between the homestead and the property to which it adhered. Once this homestead was recognized, therefore, the legislature did not need to *create* any further protection for those who held the interest. This protection was implicit in its constitutional mandate.

The legislature needed only to define the *manner* in which homestead would be *held* by these parties. In so doing, it had designated the joint tenancy as being the form in which married couples would concurrently hold the homestead. From this explanation, the Court must find that the *Roberts* court considered the Nevada homestead to be more than a mere "exemption" established by state law. It was deemed to be a special interest in real property, controllable only as to its extent by the Nevada legislature, but not as to its existence.

the community, but our concern here is with the taxpayer's *interest* in the community. Whatever may be said with regard to his interest in particular assets of the community, Washington law has never suggested that his interest in the community is nonexistent or valueless. Thus, neither the rule of nonliability nor the entity theory negates our conclusion that the taxpayer's interest constitutes 'rights to property' [under 26 U.S.C. § 6321]."

*Id.* (emphasis original) (footnotes omitted). Thus finding that the "community" interest of the taxpayer was susceptible to attachment by the federal tax lien, Judge Hufstedler then went forward to apply Section 7403 in such a way as to permit an execution upon that interest. Here, as the second element of Judge Hufstedler's analysis, the anti–alienation aspects of Washington community property law were treated merely as state "exemptions," which would rightly fall before the supremacy of subsection (c) of 26 U.S.C. § 7403. *See also* Note, Federal Tax Lien–Is It Effective Against a State Homestead Exemption?, *supra* at 701–03 (discussing reasons why such a result is inherently equitable to general taxpayers). With respect to this result, Judge Hufstedler notes that

"Section 7403 provides that the Government in an action to enforce its tax lien may 'subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.' It requires joinder of all parties having an interest in the property, and, if a claim of the United States is established, 'the court * * * may decree a sale of such property * * * and a distribution of the proceeds of such sale according to the findings of the court in respect to the

interests of the parties and of the United States.'

"Once the lien has been established, the statute empowers the district court to subject the whole of the property in which the delinquent taxpayer has an interest to a forced sale. The power is not limited to the sale of only the delinquent taxpayer's interest. [Citations omitted]. Thus, the statute contemplates that the district court may subject the interests of persons other than the taxpayer to an involuntary conversion during the course of enforcing the Government's lien on the delinquent taxpayer's interest in the same property. The owners other than the taxpayer, however, are entitled to just compensation from the proceeds of the sale for that 'taking.' "

*United States v. Overman, supra* at 1146.

In determining what sort of just compensation should be received by the non–taxpayer spouse upon the sale of the other's "community" interest, Judge Hufstedler found herself in agreement with the *Hershberger* court that the trial court might apply its equitable powers to "work substantial justice among all interested parties." [9] *Id. See also United States v. Hershberger, supra* at 679. In so exercising its discretion, however, the trial court was commanded to "turn to state law to define the property interests involved." *United States v. Overman, supra* at 1146. Under the applicable state law in *Overman*, each spouse has a one–half undivided interest in the community. Judge Hufstedler therefore declared that it would not be improper for the trial court to permit an execution to take place against the community's property under consideration, with the non–taxpayer spouse retaining one–half of the proceeds of the sale. The taxpayer's share, based upon

---

**9.** A question still exists in this Court's mind as to whether the result reached in *Hershberger* might have nonetheless been possible under Judge Hufstedler's thinking in *Overman*. The *Overman* court did not seem to hamper the equitable relief which a court might give a non taxpayer spouse on the proposed sale of community property to satisfy a federal tax lien, except to note that state law must be followed in ascertaining the extent of the tax-

payer's interest in the "community." And, the permissive language of 26 U.S.C. § 7403, which is cited in *Overman*, would appear to admit considerable leeway through which a court might protect a non–taxpayer spouse's immediate possessory interest under the homestead or community property laws where, in contradistinction to the facts of the instant case, this possessory interest has not been abated by a voluntary sale.

**172**

the "community" interest which had been attached under the federal lien, would be used in satisfaction of the taxpayer's debt to the Government.[10]

While obviously the property interests existing under community property and homestead laws are quite distinct, it is not at all difficult to see why the analysis utilized in *Overman* should be applied by this Court to a homestead claim situation. *See, e. g., Herndon v. United States*, 501 F.2d 1219 (8th Cir. 1974) (citing *Overman*, in a homestead circumstance, as negating any recourse to the "property interest" versus "exemption" dichotomy). In so holding, the Court finds no equitable reason why a division of the fungible proceeds already in the hands of the Trustee should not be made, with Mrs. Edwards receiving one–half of that amount pursuant to N.R.S. 115.050(3) and the government receiving Mr. Edwards' portion in at least partial satisfaction of its tax claim.

### III. CONCLUSION

The Trustee will, therefore, be ordered to disburse one–half of the remaining proceeds of this sale to Mrs. Edwards and the other half to the United States Internal Revenue Service, to the extent necessary to satisfy the lien held by that entity. The Court will prepare its own order in this matter.

10. The Court is somewhat puzzled by the ease with which Judge Hufstedler here transposes what seems to be a sale of the taxpayer's interest in the "community" to a permissible sale of the property owned by that community, especially since the "community," itself, would continue to exist between the husband and the wife so long as the two remained wedded. Perhaps what is really being sold is the taxpayer's community interest in that particular piece of property, and nothing more. (More likely, Judge Hufstedler merely sidestepped the complexities of community property theory in order to reach a realistic result).