[No. 1918]

IN THE MATTER OF THE ESTATE OF WALTER M. COOK,
DECEASED.

IN RE PETITION OF MRS. CLARA LOUISE COOK FOR A
HOMESTEAD.

1. APPEAL AND ERROR—RECORD—MOTION FOR NEW TRIAL.

The order denying the motion for a new trial, or the minute entry thereof, must be contained in the statement on appeal to give the supreme court jurisdiction.

2. APPEAL AND ERROR—DIMINUTION OF RECORD—ORDER DENYING NEW TRIAL.

Where the clerk's certificate referred to an "appeal from the order denying a new trial herein," the supreme court may, on appellant's application, permit him to supply the order by filing a minute entry thereof, so as to enable the supreme court to consider the appeal, though the statement on appeal originally did not contain the motion for a new trial, or a minute entry thereof.

3. APPEAL AND ERROR — RECORD — PREPARATION — PERSONAL SUPERVISION OF COUNSEL.

Counsel should personally supervise the making up of the record on appeal and not rely upon the clerks of court, and should examine the transcripts before they are sent up, if possible, so as to make timely correction of any defects therein.

4. HOMESTEAD—NATURE OF RIGHT.

The homestead right is purely statutory, not existing at common law.

5. HUSBAND AND WIFE—HOMESTEAD—COMMUNITY PROPERTY.

If a declaration of homestead is filed on community property by either spouse, the homestead vests in the survivor on the death of either, and the court must set aside the homestead in community property, even though it was not declared during the life of a deceased spouse; the property being exempt from debts of the surviving spouse or sale under execution.

6. HOMESTEAD—RIGHT OF WIDOW—SEPARATE PROPERTY.

Stats. 1861, c. 55, regulating the settlement of estates, provided in section 123 for the setting aside of the homestead to the widow and minor children, and section 126 provided that if there was no law in force exempting property from execution certain property should be set aside, including the homestead, as defined in that section. The homestead act of 1865 (Stats. 1864–1865, c. 72), section 1, as amended in 1879 (Stats. 1879, c. 131; Comp. Laws, 550), provided that if property declared a home-

stead be separate property both must join in the declaration, and if it remain separate property until the death of one spouse homestead rights therein shall cease, and it shall belong to the party or his heirs to whom it belonged when filed upon; and section 4 (Stats. 1879, c. 131; Comp. Laws, 553) provided that no exemption to the surviving spouse should be allowed, where the homestead declaration had been filed upon the separate property of either spouse, as provided in section 1. The act of 1897, sec. 101 (Stats. 1897, c. 106; Comp. Laws, 2886), authorizes the court, upon the return of the inventory, to set apart for use of decedent's family the homestead as designated by the general homestead law "now in force," whether designated as required by said law or not; and further provides that if the property declared upon be separate property both spouses must join in the declaration, and if it remain separate property until the death of one of them the homestead rights shall cease, and it shall belong to the party to whom it belonged when filed upon. Section 126 of the act of 1861 was omitted from the act of 1897, and section 123, corresponding to section 101 of the latter act, was modified. *Held*, under section 101, construed with the other statutes, that a widow cannot have set apart to her as a homestead land which was her husband's separate property at his death, and had not been declared on as a homestead; there being other heirs.

APPEAL from the District Court of the First Judicial District of the State of Nevada, in and for Ormsby County; *Frank P. Langan*, Judge.

In the matter of the estate of Walter M. Cook, deceased. From a judgment and order denying the petition of Clara Louise Cook for a homestead out of decedent's separate property, petitioner appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*Platt & Gibbons*, for Petitioner:

The sole and only question involved in this appeal is: Has the district court, sitting as a probate court, the power and authority to set aside as a homestead for the surviving wife separate property of the deceased husband?

The lower court was of the opinion that a probate homestead could not be set aside by the court for the

reason that section 550 of the Compiled Laws, dealing with homesteads created by the act of the parties themselves, provided for a descent of the homestead created by one spouse upon the separate property of another to the heirs of the owner of the separate property upon his or her death; that this provision evinced an intention on the part of the legislature to vest title to the separate property upon which a homestead was created in the heirs of the owner upon his death, and that it would be doing violence to that intention to hold that a probate homestead could be imposed upon said separate property.

The amended statute of 1879 deals only with homesteads created by the act of the parties. It simply provides for the termination of a homestead already created and the devolution of the title upon the termination of the homestead estate. It in no way touches upon probate homestead, and it is apparent that it in no way defines or limits the right of the district court sitting in probate. It does not purport to do so, either by its language or evident intent; it deals only with homesteads created by the act of the parties.

It does not, in fact, apply to the present case, since here no homestead was created in the lifetime of deceased, and there is no room for the operation of the statute. The lower court, instead of deciding this case upon the facts as they existed, decided it upon facts nonexistent. Because section 550 provides that the homestead property when created in the lifetime of the parties goes to the heirs of the deceased, the lower court assumed that such was the law when no homestead was created in the lifetime of the parties.

In the present case no homestead was created by the act of the parties, and to determine the power of the court to set aside a homestead we must examine the powers conferred upon the district court by the probate laws. The right of inheritance is not an inherent right, but is one conferred by the legislature, and the heirs take their inheritance subject to all such burdens and conditions as the legislature may impose. When the legislature provides

that upon the death of one intestate the title to his property devolves upon his heirs at law, the meaning of the law is that the title devolves upon the heirs subject to administration. The heir's right of succession is subject to all the uses, burdens of administration, and the power of the court to lessen or take away his title, under the authority given it sitting as a probate court. That court may lessen the value of his estate by imposing upon it collateral inheritance taxes, attorney fees, and other expenses; may order the property sold for the payment of debts of the deceased and family allowance, and may impose upon his estate a superior estate, to wit, a probate homestead. The heirs' title is always inferior to the uses and purposes of administration. To say that because a law provides for the devolution of property to the heirs of a decedent, therefore no homestead can be carved out of it, is to ignore the nature of the heirs' title and to repeal the statute giving the court in plain language the power to set aside to the widow a homestead, whether such homestead has theretofore been selected as required by said law or not.

The court must bear in mind that there are two homesteads known to the Nevada law—homesteads created by the act of the parties, and homesteads created by the district court, which are called probate homesteads. Some of their attributes are the same, to wit, the character and value of the homestead created are the same; the chief difference is in the method of creation. The purpose of both is the same—to provide a home for the family, thus evincing the regard for the family as a family, as shown by all laws formulated by the Anglo-Saxon race.

Our position is simply this: Upon Walter M. Cook's death his separate property descended to his heirs, subject to administration, but the court has been given the power to set aside to the widow a homestead out of any property of the deceased according in value and character to the provisions of the law.

Before we consider the provisions of the law bearing

upon the power of the district court to set aside a homestead to the surviving widow out of the separate property of the deceased husband, it is proper that we ascertain the relative dates of the laws bearing upon the question. If this court should hold that section 550 of the Compiled Laws and section 2886 thereof dealt with the same subject, and were in conflict, it would give full force and effect to the later act in all conflicting provisions.

Section 550 is the first section of "An act to exempt the homestead and other property from forced sale in certain cases," approved March 6, 1865. Section 550 was amended in 1879, so that section as it now stands dates from 1879.

Section 2886 is the one hundred and first section of "An act to regulate the settlement of the estates of deceased persons," approved March 23, 1897. So its provisions must control the decision of the court in this case if the court shall determine that the two sections conflict.

But we see no conflict between the two sections. They were enacted for different purposes—one to protect the homestead during the lifetime of both spouses; the other to afford a home for the widow and minor children after the death of the breadwinner. One confers power upon persons, while the other grants authority to a court. The only connection between the two is that the latter act refers to the former for the purpose of ascertaining the character and value of the property which may be set aside as a homestead.

Section 2886 makes it the imperative duty of the district court to set aside for the use of the family of deceased "the homestead as designated by the general homestead law now in force, whether such homestead has theretofore been selected as required by said law or not."

Language could not be more explicit. The homestead designated by the general homestead law may consist either of separate or community property; the fact that it has not been selected during the lifetime of the deceased is made immaterial by the statute itself. The section

does not limit the power of the court to select a homestead from the community property alone, and there is nothing in either the spirit or purpose of the law which should so limit it. The family of a deceased husband needs a homestead more than were the husband alive and able to give his family protection.

If the above law did not contain the words "whether such homestead has theretofore been selected as required by said law or not," there might be some question about the matter, but those words remove all doubt, especially when we consider their history.

Section 2886 was originally section 123 of the act of the territorial legislature of Nevada, 1861, and did not then contain the above words, which did not appear in the section until 1897. Why were these words inserted except for the very purpose of giving the court the power claimed for it by us? The judgment of the lower court nullifies these words and gives them no operative force whatever. Under the construction of the lower court the art of interpolation is resorted to and the language is made to read as follows: "Whether such homestead has theretofore been selected as required by said law or not, provided the property sought to be set aside is community property." No rule of construction can justify such a distortion of plain and simple language from its plain and simple meaning.

While in construing a statute of this state decisions of another state upon similar statutes are not conclusive, still they may point the way to a proper interpretation of our statute. It is a well-known fact that the statutes of California have been extensively followed by the Nevada legislature. A comparison of the acts of the legislature of the State of California, at its second session, 1851, commencing at section 120, p. 462, chapter V, title "Provision for the Support of the Family," with the act of the territorial legislature of the Territory of Nevada entitled "An act to regulate the settlement of the estates of deceased persons," approved November 21, 1861 (Stats. 1861, p. 186, title V, "Provision for the Support of the

Family," p. 204, secs. 122 and 123), will show the two laws to be practically identical.

Thereafter the California law was in 1865–66 amended so as to read practically the same as does section 2886 of the Compiled Laws, and we submit that the decisions of the California supreme court interpreting this law, if not authority binding upon this court, are persuasive reasoning in our favor.

To give a restricted meaning to a statute allowing a homestead to a widow is not only to violate the general spirit and policy of all homestead legislation, but violates the express policy of this state as found in its constitution.    (See sec. 30, art. 4, of the Constitution.)

*William Woodburn* and *J. Poujade*, for Respondents:

The statement on motion for new trial is not identified. No paper in the transcript is identified.    Even an exhibit will be stricken from the files if not identified by endorsement. (*Reno W. L. & L. Co.* v. *Osburn*, 25 Nev. 68.)

In *Dean* v. *Pritchard*, 9 Nev. 232, certain affidavits were referred to in the specifications of error and were used at the hearing on motion for new trial, also were referred to by the trial judge in his opinion on the motion, in which he gave the substance of them.    But there was no endorsement on them showing that they were read or referred to at the hearing.    To meet this objection a memorandum to the desired effect, made by the trial judge after the transcript was filed, was offered.    Appeal dismissed.

Appellant's motion for permission to supply the record (if it could have been considered at all) should have been upon five days' notice.    (Rule XXIV of this court.)

The motion for permission to supply the record is not available.    *Certiorari* is the proper proceeding on diminution of record.

In *Kirman* v. *Johnson*, 30 Nev. 146, cited by appellant, the mere negative statement by the court: "Nor does the certificate of the clerk mention any such order," cannot be construed into a decision that the mention of an order

by the clerk is the equivalent of, or a valid substitute for, the order itself, or a minute thereof. But, even if so, the order is not mentioned in the clerk's certificate in the case at bar. "Mention," as used by the court meant naming, including in a list, not a mere reference from which an inference might be drawn.

The clerk's mere assumption (if he had one) may not have been well based; just as the assumption of all of us that such an order was in the record (until we learned it was not) was unfounded. It is as true here as in *Kirman* v. *Johnson* that "so far as the record shows there may never have been such an order made."

Without a record of order appealed from there is no appeal. There is nothing here to clothe the court with jurisdiction.

As to the matter involved herein, there is in no essential point a distinction between *Kirman* v. *Johnson* and the case at bar.

In *Kirman* v. *Johnson* appellant asked, as appellant asks here, that he be permitted to remedy the defect; and when the court in that case regretted inability to decide, on its merits, a case of grave importance, it emphasized the necessity of compliance with the statute, and it affirmed a doctrine crystallized in the law and practice of this state through a long line of cases (in which doubtless many of the appellants made the same request) and which cannot now be changed except through change of the statute.

In distinguishing the other cases cited in appellant's brief, it is to be remembered that the California practice, almost from the beginning, has widely differed from ours. While our court has insisted that the statute be followed strictly, the California court has so far disregarded the statute that, in the words of Spelling, "there were several cases decided shortly after the adoption of the California codes in which it was held that a motion to dismiss for failure to comply with statutory conditions would not be entertained." (Vol. 2, New Trial & App. sec. 668.)

Yet, loose as the practice in that state has been, every

case cited by appellant is easily distinguished from the case at bar.

In *Wakeman* v. *Coleman*, 28 Cal. 58, cited by appellant, the court only ordered that appellant be permitted to supply copy of undertaking on appeal. The judgment had not been appealed from. The order denying motion for new trial was in the record.

In *McQuade* v. *Whaley*, 29 Cal. 612, cited by appellant, an attempt had been made to substitute for the pleadings brief notes, which (in California) would have been sufficient—especially if so stipulated. The court said (p. 614): "As the objection is technical, and as the statement of the issues * * * would be sufficient for the purposes of an appeal, had it been substituted by stipulation, we think leave to supply the petition should have been granted." No order denying motion for new trial was involved.

In *Kimple* v. *Conway*, 69 Cal. 71, cited by appellant, the paragraph on which appellant seems to rely refers to an appeal from an order denying a new trial—not an appeal from a judgment. Therefore the copy of the final judgment was not essential in the jurisdictional sense in which the order denying the motion for new trial, the thing appealed from, is essential. The question of supplying such order was not involved.

In *Richardson* v. *Eureka*, 92 Cal. 64, cited by appellant, the order denying the motion for new trial (which alone appears to have been appealed from) was not involved. Note also that in California, according to this decision, notice of motion for new trial might be omitted.

In *Paige* v. *Roeding*, 89 Cal. 69, cited by appellant, appellant has again evidently been misled. The decision is simply that the omissions from the judgment roll were not sufficiently important to require dismissal of the appeal, but that, if respondent thought them material to his case, he might suggest diminution of the record and have them inserted.

In *Hill* v. *Finnigan*, 54 Cal. 311, cited by appellant, we again find the court dealing only with the bond and the

notice of motion for new trial. The judgment (which in this case was appealed from) was not lacking.

In *Emeric* v. *Alvarado*, 64 Cal. 529, cited by appellant, the appeal was from an interlocutory judgment. Final judgment had not been given, and the objection that the entire judgment roll was not in the transcript was futile because the entire judgment roll had not been, and could not be, made up. There is nothing to show that the defect in the judgment roll was material. The statement, "It is not the practice of this court to dismiss an appeal under such circumstances, when the defect can be readily cured on the suggestion of diminution," adds nothing to appellant's case. On the other hand, it shows what is displayed in many California decisions — an extreme tendency to aid the appellant to a hearing on merit—a tendency which, as we have seen, *supra,* sometimes led that court to disregard the statute. Our supreme court has never yet permitted itself to be thus misled.

So much for appellant's California cases, not one of which could be applied to the case at bar even if the Nevada court could cast aside its own practice of half a century to adopt that of another state.

*Sweeney* v. *Lomme*, 22 L. Ed. 727, cited by appellant, cannot apply here. The decision is under a rule of practice which has never been followed, and cannot now be followed, under the statutes, practice and decisions in this state.

Likewise in *Bank of Minden* v. *Lake Bistenau L. Co.,* 47 La. Ann. 1432, cited by appellant (in which, however, the appeal was dismissed), the court's remark quoted by appellant, which can hardly even be called a *dictum,* was based on a statute radically different from ours—Voorhies, Rev. St. 1876, sec. 36, which in full is as follows:

"No appeal to the supreme court shall be dismissed on account of any defect, error or irregularity of the petition or order of appeal, or in the certificate of the clerk or judge, or in the citation of appeal or service thereof, or

because the appeal was not made returnable at the next term of the supreme court, whenever it shall not appear that such defect, error or irregularity is imputed to the appellant; but in all cases the court shall grant a reasonable time to correct such errors or irregularities (in case they are not waived by the appellee) and may impose on the appellant such terms and conditions as in their discretion they may deem necessary for the attainment of justice, and may also impose such fines on the officers who shall have caused such irregularities as they may deem proportioned to the offense."

The foregoing may be a very desirable statute; but it is not our statute.   If it were, could the mere assumption that an order existed give this court jurisdiction over a matter brought to its attention by means of papers which legally represent nothing and import nothing?

There is no authority for appellant to bring into this court, after transcript filed and after the expiration of the prescribed time, what amounts to a second transcript.

The situation in the case at bar would not permit the course here attempted.   Spelling on New. Tr. & App. Pr. in vol. 2, sec. 650, after referring to defects which may be corrected on suggestion of diminution, says (p. 1373):

"But the body of the transcript may be otherwise so defective as to necessitate a dismissal; as where it does not contain any appealable order or judgment; or there is nothing to show that a notice of appeal was filed or served; * * * or the record does not contain either verdict or judgment, the appeal being from the judgment." (Clyne v. Bingham Co., 60 Pac. 76; Savings Co. v. Meeks, 66 Cal. 371; Anderson v. Dubois, 10 Utah, 60.)

Even in California it is recognized that a court cannot always disregard a written law.

When a cause has been regularly tried and decided it it can be reviewed only in the modes prescribed by statute.   (Carpenter v. Superior Court, 75 Cal. 596.)

The Supreme Court of Nevada has adhered strictly to the statute, which (Comp. Laws, 3422) in direct terms

confers authority upon this court to review judgments and orders from which appeals can be taken in the manner prescribed by this act and not otherwise.

The method of taking appeals and the questions to be considered thereunder are matters of purely statutory regulation.

This court has never yet permitted its rules to be so construed as to supersede or contravene the statute.

It is obvious that an omission of such character that this court must, of its own motion, dismiss an appeal for want of jurisdiction, cannot be cured by the act of appellant in attempting to supply it by a proceeding not authorized by statute.

In the record on appeal there is an entire absence of an order, or copy of order, or minute of order, overruling appellant's motion for a new trial, which is essential to give the appellate court jurisdiction. (Compare *Kirman* v. *Johnson*, 30 Nev. 146.) On petition for rehearing in that case, the court said: "If an order was made denying the motion, necessarily there would be a minute entry thereof, and, in the absence of a written order, a copy of the minute entry is necessary to be embodied in the statement on appeal to clothe this court with jurisdiction. An appeal from an order or judgment without a copy thereof in the record is manifestly futile."

No such minute entry is embodied in the statement on appeal here.

In *Corbett* v. *Job*, 5 Nev. 201, it was decided that if the statement on appeal does not state specifically the particular errors or grounds upon which the appellants intend to rely on appeal, "this court has no power to consider such statement."

In *McCausland* v. *Lamb*, 7 Nev. 238, it was decided that, as there was no statement, "there is nothing in the transcript for review."

In *Kalmes* v. *Gerrish*, 7 Nev. 31, the court (apparently of its own motion) says: "The record fails to show that

the motion [for new trial] has yet been disposed of, or acted upon by the district court. The appeal from the order is therefore premature, and is dismissed."

In *Irwin* v. *Sampson,* 10 Nev. 282, this court says: "The transcript in this case contains an abstract of the minutes reciting in detail the orders of the court and proceedings during the trial; the findings of the court, original and amended judgments, injunction, stay of execution, notice of appeal, undertaking on appeal, and exceptions to the sufficiency of the sureties and their justification presented independently in the apparent order of the trial and proceedings, instead of a statement on appeal as is required by section 332 of the civil practice act. * * * There was a stipulation signed by the respective counsel 'that the foregoing transcript on appeal is correct, and shall be the transcript in this case on appeal.'" Yet the appeal was dismissed, apparently on the supreme court's own motion.

In *Greeley* v. *Holland,* 14 Nev. 320, the court says: "Upon the oral argument in this case, on motion of respondent, the minutes of the district court, affidavit for continuance, bill of exceptions with the exhibits attached thereto, and all other matters not embraced in the so-called statement on appeal, judgment roll, or authenticated as by law required, were stricken from the transcript on appeal. The minutes of the court, affidavit for continuance, and some other matters, were stricken out because they were not embodied in the statement on appeal."

In another case the court says: "While the motion to strike out mentions the judgment as one of the papers excepted from the motion, we do not find in the record certified to by the clerk as containing the judgment roll, any document purporting to be the judgment or a copy thereof, or a copy of the order dismissing the action. There being nothing before the court for consideration, the appeal must be dismissed, and it is so ordered." (*Hart* v. *Spencer,* 29 Nev. 286.)

Many other Nevada cases in which the principle for which we contend has been upheld, and appeals dismissed, could be cited.

In no case, under our statute, has such a proceeding as here attempted ever been countenanced; nor has any case occurred wherein, through any procedure, an appeal without the judgment, order, or minute thereof in the transcript, when filed, has not been dismissed, if brought to the attention of the court.

By the Court, SWEENEY, C. J.:

This is an appeal from the judgment and order of the lower court refusing to set aside a homestead to the widow from the separate property of the husband, dying intestate. It appears that Walter M. Cook died intestate, leaving surviving him his widow, Clara Louise Cook, the appellant herein, who, with sisters, nieces, and a nephew, are his sole and only heirs at law. Among other property, his estate consisted of a tract of land, upon which appellant and deceased, in his lifetime, lived, and which they occupied as their home. It is conceded that this tract of land was the separate property of the deceased, and that the same does not exceed in value the sum of $5,000. It further appears there was no community property in this estate. It also appears in the record that no homestead was declared upon the separate property of the deceased, Walter M. Cook, by himself or appellant, or that any homestead whatever was reserved by either of them from any property belonging to deceased or the appellant herein.

Appellant filed her petition asking to have this particular tract of land, together with the dwelling house situated thereon, and on which appellant and the deceased resided prior to and at the time of the death of deceased, and on which the appellant presently resides, set aside to her as a homestead, and the same was contested by other heirs at law of the deceased. After a hearing of the contest upon this issue, the court found the tract of land and dwelling house thereon in question not to exceed the value of $5,000, and to be property of such character that, had

it been filed upon during the lifetime of the deceased, it could have been homesteaded, but that under the laws of Nevada the court had no authority to set aside the separate property of the deceased husband as a homestead to the surviving wife, when the property remained the separate property of deceased at the time of his death.

The transcript on appeal, when resolved into the legal query for us to answer, is, Has the district court, when acting as a probate court, the power and authority to set aside as a homestead for the surviving wife separate property of the deceased husband?

Preliminary to passing upon this question, however, it will be necessary to pass upon respondents' motion to dismiss the appeal, interposed upon the ground that the statement on appeal fails to contain the order of the lower court denying the motion for a new trial, from which this appellant has appealed. Among other authorities, in support of their contention, respondents rely chiefly upon the case of *Kirman* v. *Johnson*, 30 Nev. 146. In that case we properly held that "the order of the lower court denying the motion for a new trial, or, in its absence, the minute entry thereof, is required to be embodied in the statement on appeal to clothe this court with jurisdiction." If the case at bar was not distinguishable from the *Kirman* v. *Johnson* case, *supra*, the motion to dismiss herein would have to be granted. There is, however, this distinguishing feature which vests this court with sufficient jurisdiction to take hold of this appeal, and decide the very interesting and important issue involved herein and never before determined in this state.

In the *Kirman* v. *Johnson* case, *supra*, among other matters in relation to the record therein presented, we stated: "An examination of the papers appearing to have been sent up in this case fails to disclose any order in reference to the motion for a new trial, or a copy thereof, nor does the certificate of the clerk mention any such order. So far as the record shows, there may never have been such an order made."

In the case now under consideration, the certificate of the clerk does mention and refer to an "appeal from the order denying a new trial herein." In the *Kirman* v. *Johnson* case there was no suggestion of a diminution of the record prior to or at the time of the argument on motion to dismiss; while in the present case an application was made to the court by counsel for appellant for the privilege of supplying the order denying the motion for a new trial, and the court, subject to the objection of counsel for respondents, granted the appellant the privilege of supplying the order within three days' time; and the appellant, in compliance with such privilege, had filed within the time allowed a minute entry of said order complained of as absent from the record, and the same is now a part of the record on appeal before us.

While counsel for the appellant have gone to the extreme limit of the danger line of dismissal by their oversight or inadvertence in failing to have their record contain this most essential paper in the first instance for the consideration of this court on appeal, and by the grace of a court rule and the indulgence of the court their appeal has been saved, yet, notwithstanning this close escape from a dismissal of the action without having the point involved passed on its merits, we feel it our duty to admonish counsel for appellant in the present case, and by this means warn other attorneys who are negligent in the preparation of their records on appeal, in future to personally supervise the making up of their records on appeal, and not to trust important rights to be jeopardized by relying upon the various clerks of the lower courts who, although entirely honest, willing, and conscientious, yet, by reason of the technical requirements of the statute, are not qualified enough in the knowledge of the law to prepare perfectly difficult transcripts containing all the essential papers. All attorneys should make it their especial duty to examine their transcripts on appeal before or at the time the transcripts leave the hands of the clerk of the lower court, when possible, and if a defect escapes their attention there, when discovered, within a sufficient

length of time before a motion to dismiss is set for hearing in this court, to avail themselves of any of their rights under the court rules at once, and not wait until the time the motion is being heard to apply to the indulgence of this court for relief, to the end that all cases may be heard on their merits. It is always distasteful to this court and an unpleasant duty to have to dismiss an appeal because of some inadvertence, neglect, or oversight of counsel, and particularly where important rights and questions involved should be decided on their merits.

We come now to a consideration of the sole and only issue presented to us, to wit, as to whether or not a widow is entitled to have set apart to her as a homestead the land and dwelling house thereon, when the same is the separate property of her husband at the time of his death, and there are other heirs. Before answering this question, in view of the fact that the right of homestead did not exist at common law, and is one of statutory origin, and that whatever homestead rights exist must be by virtue of the statutory law of the state and the construction given by the courts to those statutes, it will be necessary, in order to arrive at a proper solution of this question, to examine the homestead acts of this state, the same being embodied in the homestead act of March 6, 1865, as amended in 1879, and as further throwing some light on the point at issue, those sections of law now in force in reference to the estates of deceased persons, which deal with homesteads and the duty of the probate judge with reference thereto.

Section 1 of the homestead act of 1865 (Stats. 1864–65, c. 72), as amended in 1879 (Stats. 1879, p. 140; Compiled Laws, 550), provides as follows: "The homestead, consisting of a quantity of land, together with the dwelling house thereon and its appurtenances, not exceeding in value five thousand dollars, to be selected by the husband and wife, or either of them, or other head of a family, shall not be subject to forced sale on execution, or any final process from any court, for any debt or liability contracted or incurred after November thirteenth, in the

year of our Lord one thousand eight hundred and sixty-one, except process to enforce the payment of the purchase money for such premises, or for improvements made thereon, or for legal taxes imposed thereon, or for the payment of any mortgage thereon, executed and given by both husband and wife, when that relation exists. Said selection shall be made by either the husband or wife, or both of them, or other head of a family, declaring their intention in writing to claim the same as a homestead. Said declaration shall state when made by a married person or persons that they or either of them are married, or if not married, that he or she is the head of a family, and they or either of them, as the case may be, are at the time of making such declaratton, residing with their family, or with the person or persons under their care and maintenance on the premises, particularly describing said premises, and that it is their intention to use and claim the same as a homestead, which declaration shall be signed by the party or parties making the same, and acknowledged and recorded as conveyances affecting real estate are required to be acknowledged and recorded; and from and after the filing for record of said declaration, the husband and wife shall be deemed to hold said homestead as joint tenants; *provided,* that if the property declared upon as a homestead be the separate property of either spouse, both must join in the execution and acknowledgment of the declaration; and if such property shall retain its character of separate property until the death of one or the other of such spouses, then and in that event the homestead rights shall cease in and upon said property, and the same belong to the party (or his or her heirs) to whom it belonged when filed upon as a homestead; *and, provided further,* that tenants in common may declare for homestead rights upon their respective estates in land, and the improvements thereon; and hold and enjoy homestead rights and privileges therein, subject to the rights of their cotenants, to enforce partition of such common property as in other cases of tenants in common."

Section 4 of said act (Stats. 1879, p. 141; Compiled Laws, 553) provides as follows: "The homestead and all other property exempt by law from sale under execution, shall, upon the death of either spouse, be set apart by the court as the sole property of the surviving spouse, for his or her benefit and that of his or her legitimate child or children; and in the event of there being no surviving spouse, or legitimate child or children of either, then the property shall be subject to administration and to the payment of his or her debts and liabilities; *provided*, that the exemption made by this act and the act of which it is amendatory shall not extend to unmarried persons, except when they have the care and maintenance of minor brothers and sisters, or both, or of a brother's or sister's minor children, or of a father or mother, or of grandparents, or unmarried sisters living in the house with them; and in all such cases the exemption shall cease upon the cessation of the terms upon which it is granted; and upon the death of such unmarried person, the property shall descend to his or her heirs, as in other cases, unless disposed of .by will, subject to administration and the payment of debts and liabilities; *and, provided further*, that no exemption to the surviving spouse shall be allowed in cases where the homestead declaration has been filed upon the separate property of either husband or wife, as provided in section one of this act; *provided*, nothing in this act shall be held or construed to in any manner affect existing rights or pending litigation; but all such rights and litigation shall be determined by the act before in force, and of which this act is amendatory."

Section 101 of an act to regulate the settlement of the estates of deceased persons, enacted in 1897, and now in force (Stats. 1897, p. 134; Compiled Laws, 2886) provides as follows: "Upon the return of the inventory or at any time thereafter during the administration, the court or judge, of his own motion or on application, may set apart for the use of the family of the deceased all personal property which is exempt by law from execution, and the

homestead as designated by the general homestead law now in force, whether such homestead has theretofore been selected as required by said law or not, and the property thus directed to be set apart shall not be subject to administration."

It is conceded by both parties in the present case that the homestead now attempted to be carved out of the estate of the deceased was at all times during the marriage of deceased, prior to his death, and at the time of his death, the separate property of the deceased, and, further, that at no time was there ever a declaration of homestead filed by either party upon said property in controversy.

This court has repeatedly and properly held, under our homestead laws, that if the property be community property, and a declaration of homestead has been filed thereon by either party, the homestead at the time of the death of either spouse vests in the survivor (*Smith* v. *Shrieves*, 13 Nev. 303); and that, where the property is community property, the homestead right does not cease on the death of one of the spouses (*Roberts* v. *Greer*, 22 Nev. 318) and that, where the property involved is community property, the court must set aside the property to the surviving spouse, even though it were not declared upon during the life of the deceased (*Estate of David Walley*, 11 Nev. 260); and that, in a case where a person is entitled to a homestead right to community property upon the death of either party, even though childless, the homestead right does not cease, and the property is exempt from the debts of the surviving spouse, or forced sale by execution. (*Roberts* v. *Greer*, 22 Nev. 318.) In the present case, however, the property involved being conceded separate property, a new and different question presents itself.

It is strongly insisted by counsel for appellant that it is immaterial whether the property be separate or community property at the time of the death of the husband, and that the district court is privileged, and it is its duty, under the power vested in the court by section 101 of the act regulating the estates of deceased persons, *supra*, to set aside a homestead for the surviving spouse. In answer

to this contention, it must be stated that the district court has no authority to create a homestead otherwise than as designated by existing statute, and the statute plainly negatives the position of appellant as to separate property wherein it says: "That if the property declared upon as a homestead be the separate property of either spouse, both must join in the execution and acknowledgment of the declaration; and if such property shall retain its character of separate property until the death of one or the other of such spouse, then and in that event the homestead right shall cease in and upon said property, and the same belong to the party (or his or her heirs) to whom it belonged when filed upon as a homestead. * * *"

It is unnecessary to determine, under the act of 1861 (Stats. 1861, c. 55), regulating the settlement of estates of deceased persons, prior to the amendment of the homestead act of 1865 by the amendment of 1879, whether the district court, acting in estate matters, had the power to set aside a homestead to the widow out of the separate property of the deceased husband. The homestead act of 1865, as well as the original homestead act of 1861, made no distinction between separate and community property. Separate and community property were not defined by statute until 1873, when "An act defining the rights of husband and wife" was adopted (Compiled Laws, 510–544), excepting that the separate property of the wife was defined in the constitution. (Article 4, sec. 31.) The amendment of 1879 to the homestead act worked a radical change in the former provisions, and by clear and unmistakable language the legislature evinced its intent that the homestead exemption as to separate property should only exist where both husband and wife joined in the declaration, and then that it should cease upon the death of either spouse, and the property "belong to the party (or his or her heirs) to which it belonged when filed upon as a homestead." By this amendment, separate property, upon the death of either spouse, stood in the same condition as though no homestead right had ever attached. The legislature was particular to provide

that if it was the separate property of the surviving spouse it still was the separate property of such spouse, freed from the homestead exemption, and that if it was the separate property of the deceased spouse it should descend to his or her heirs, likewise freed from the homestead exemption.

The act of 1861, regulating the settlement of estates of deceased persons, by section 123, made provision for the setting aside the homestead, as designated by the homestead law, to the widow and minor children, and to the widow in the event there were no minor children; and by section 126 of the same act it was provided that, in the event there was no law in force exempting property from execution, certain specified property should be set aside, including the homestead, as defined by that section.

The act of 1897, regulating the settlement of estates of deceased persons, repealed the similar act of 1861. Section 126, *supra*, of the act of 1861, was omitted entirely from the act of 1897, and section 123 of the former act, which corresponds to section 101 of the act of 1897, was modified. Section 101 of the act of 1897 is certainly no more specific in regard to the setting aside of the homestead than were sections 123 and 126 of the act of 1861.

If, after the amendment of the homestead act of 1865 by the amendment of 1879, the district court, under sections 123 and 126 of the act of 1861, regulating the settlement of estates, could still set aside homesteads out of the separate property of the deceased husband, then the legislature accomplished nothing by the said amendment of 1879, regardless of the fact that its intent was clearly manifested by the language used—a situation not to be contemplated.

If the construction contended for section 101, *supra*, of the act of 1897, is correct, then that section virtually repeals the amendment to the homestead act of 1879. Repeals by implication are not favored, and when two statutes are *in pari materia* it is the duty of the court to construe them with reference to each other, so that both may stand, if possible. This can be done in

the present case only by construing the words of section 101, *supra*, "the homestead as designated by the general homestead law now in force," as not only relating to the character and value of the land which may constitute a homestead, but as such homestead right is affected by the other provisions of the statute "now in force," limiting the right. This construction gives force to all the various acts relative to homesteads, including section 11 of the "Act defining the rights of husband and wife" (Comp. Laws, 520), which also relates to the homestead set apart out of the community property.

While not strictly in point, because the language of the statutes is not the same, it may be noted that in the case of *In re Eyere's Estate*, 7 Wash. 291, 34 Pac. 831, the Supreme Court of Washington reached the same conclusion as to the provisions of the statutes of that state as arrived at here.

Whether or not the legislature should make some more definite and liberal provisions for the support of the widow and minor children out of the separate property of the husband is a matter for that branch of government to determine.

The property in question being conceded to be the separate property of deceased at the time of his death, and the said Walter M. Cook dying intestate, the court below, not possessing any legislative power to alter the law as it is written, properly refused to set aside the tract of land and dwelling house in question as a homestead, and properly decreed it subject to administration and distribution pursuant to the law of distribution now existing in this state, and in consequence the judgment and order appealed from must be affirmed.

Let such be the order.