# Watts *v.* Gordon.

*Detinue for Houses as Personal Property.*

1. *Homestead exemption; in what property claimed.*—The constitutional and statutory provisions, securing homestead exemptions to debtors, are intended to preserve the home or dwelling-place of the debtor and his family, rather than any particular estate or interest in land ; and when a debtor has erected a house on leased lands, having reserved, by the terms of the lease, the privilege of removing it at the termination of his lease, he may claim it as his homestead, if it is used and occupied by himself and his family as their home ; and while so used and claimed, it can not be mortgaged without the voluntary signature and assent of the wife, manifested in the mode required by the statute.

APPEAL from the Circuit Court of Montgomery.
Tried before Hon. JAMES Q. SMITH.

WATTS & SONS, for appellant.

GUNTER & BLAKEY, *contra.*

BRICKELL, C. J.—This is an action for the recovery of certain houses, as chattels, in which the appellant was plaintiff, and the appellee was defendant. A trial was had on the general issue, and there was a verdict and judgment in favor of the defendant. The facts were agreed upon by the parties, and, as shown by the bill of exceptions, are these : The houses are situate on land owned by the Mobile and Montgomery Railway Company, which were, early in 1879, leased to the defendant for the term of five years, at an annual rent of five dollars ; the lessor reserving the right of terminating the lease at pleasure ; and the lessee, the right, on the termination of the lease, or the expiration of the term, of removing all houses, or other improvements he might erect

[Watts v. Gordon.]

on the premises. Under the lease, the defendant entered into possession, and built the houses now in controversy, using and occupying them as a dwelling-place for himself and family, and a part of them in connection with his trade as a butcher. While so in possession and use of them, he made a mortgage thereof, in the execution of which his wife joined; but it was not acknowledged and certified in the mode prescribed by the statute for the alienation of the homestead. Under a power in the mortgage, a sale of the houses was made, at which the plaintiff became the purchaser; and the defendant refusing to surrender possession of them, this action was commenced. The Circuit Court instructed the jury, that the plaintiff was not entitled to recover; and this instruction is the error assigned.

The contention between the parties is resolved into the single inquiry, whether the houses can be regarded as the homestead of the defendant. If they are to be so regarded, it is admitted the mortgage is void, and there was no error in the ruling of the Circuit Court. This inquiry is not to be solved, by ascertaining how houses, erected by one man, on the lands of another, under a mere license, conferring no right or interest in and to the lands on which they may stand, are regarded; nor yet whether, as between lessor and lessee, these houses would be regarded as fixtures the lessee has the right of removing. The inquiry is, rather, whether the defendant, having the power, as an incident of his ownership, before and at the time of the execution of the mortgage, devoted whatever of interest he had in the lands, or in the houses, to use and occupancy as a home,—as a dwelling-place for himself and family. It is the home place—the roof that shelters—the constitution and statutes protect from liability to the payment of debts, and, when the owner is a married man, subject to the restrained alienation. The interest which the debtor may have, whatever may be its frailty, if it is capable of being subjected to the payment of debts, or capable of alienation, falls within the influence of the constitution, and of the statutes passed in pursuance of it, and for the full accomplishment of its beneficent purposes. The essential element and characteristic of the right or privilege which the constitution confers upon the owner, without regard to the quality or quantity of his estate or interest— without inquiring whether it is of freehold, or a mere chattel interest, according to the canons of the common law—is of selecting and devoting whatever of his property is capable of the use, to the uses of a homestead for himself and family. The inferiority, infirmity, or frailty of his interest, may to him and his family lessen the value of the home in which

they dwell; but it can not injure creditors, from whose demands, it may be, is thereby withdrawn less of his present property, or his future acquisitions. Nor can purchasers, who are diligent, sustain damage; for the very uses to which the property is actually devoted, must put them on inquiry, and charge them with notice.

The great controlling purpose and policy of the constitution, is the protection, the preservation of the homestead,— the dwelling-place. A houseless, homeless population, is a burden upon the energy and industry, and corrupting to the morals of the community, of which they may be members. No greater calamity, not tainted with crime, can befall a family, than to be expelled from the roof under which it has been gathered and sheltered. Protection of an estate or interest in lands, whatever may be its dignity or inferiority, merely because it is an estate or interest in lands, is not the purpose of the constitution, or of the statutes. The hypothesis that such was the purpose, has led to some decisions, which we have been constrained to overrule, under the influence of which, a debtor, of his mere ·volition, was permitted to withdraw from the payment of his debts valuable estates or interests in lands which he had not devoted, nor manifested an intention to devote, to use and occupancy as a homestead. The policy of the constitution, and of the statutes, can not work injustice to either debtor or creditor if it is observed. It is the preservation and protection of the homestead, rather than of an estate or interest in lands; and if we look beyond the essential characteristics of a homestead, actual occupancy as a home, a dwelling-place, and enter upon an inquiry as to the tenure upon which the right of occupancy depends, we are sure to contravene this policy. The policy will be thwarted, to the injury of creditors and of purchasers, if lands in which the debtor has a freehold, or other estate of defined legal dignity, is withdrawn from liability to the payment of his debts, because, in the stress of necessity, forced by legal process for their levy and sale, he is induced to declare he selects them as a homestead, though to such uses he has not devoted them. The evils of the poverty of the debtor will be aggravated, not alleviated, if, because of the frailty of his right and interest, the house he has devoted to use and occupancy as a homestead, is made liable to the demands of creditors. It is the house, the dwelling-place,— not of necessity, an estate or interest in lands,—which must be protected and preserved. Usually, it is accompanied by such estate or interest; but, if it is not, it is the misfortune of the occupant, and of those who are dependent upon him,

[Broughton v. Wimberly.]

and can not subject it to a liability, to which it would not be exposed if such an estate or interest attended it.

On the houses now in controversy, and the lands on which they rest, so far as the defendant had an interest in them, the essential characteristics of a homestead had been impressed, before and at the time of the execution of the mortgage. It was his right—an incident of his ownership—as certainly as the right and incident of alienation, so to select, use and occupy them. They were his homestead—his dwelling-place—in law and in fact; and whatever of right or interest he had, by the use and occupancy, was withdrawn from liability for the payment of debts, and was incapable of alienation, without the *voluntary signature and assent* of the wife, manifested in the mode the statutes have prescribed. Any other alienation was void, conferring no rights, and creating no estoppel or disability. Whether these houses, attended by a legal right to the use and occupation of the land on which they stand, are a homestead within the purview of the constitution, and protected by it, depends, not on the quantity or quality of the estate of the lessee, but on the nature and character of the act with which they were put in place, and the intention of the lessee, as shown by the uses to which they are appropriated. This is the spirit of several of the decisions of this court, made after great deliberation, and it is obedience to the policy of the constitution. *Weber v. Short*, 55 Ala. 311; *McGuire v. Van Pelt, Ib.* 344; *McConnaughy v. Baxter, Ib.*|379; *Chambers v. McPhaul, Ib.* 367. Such, too, it may be observed, was the understanding of the parties to the mortgage; for the joining of the wife in its execution was contemplated, which was wholly unnecessary, if the houses were to be regarded only as chattels, and not as the homestead. It is probable the mortgage now fails of operation according to their intention, only because of the defective certificate of the wife's acknowledgment of execution.

We find no error in the ruling of the Circuit Court, and its judgment must be affirmed.