# Tyler *v.* Jewett.

*Bill in Equity for Cancellation of Mortgage on Homestead.*

1. *Cancellation of mortgage, as cloud on title of homestead.*—When a mortgage of the homestead has been foreclosed by a sale under the power, and the purchaser has recovered the possession by action at law, a court of equity will not entertain a bill by the mortgagor to cancel the mortgage as a cloud on his title, because his legal title is available at law; but this principle does not apply, if the mortgagor had only an equitable title to the homestead, and the purchaser at the sale afterwards acquired the legal title.

2. *Homestead exemption; character of estate or title.*—A homestead exemption, under constitutional and statutory provisions, may be claimed in lands which constitute the dwelling-place of the family, with its appurtenances, without regard to the nature or character of the title, whether legal or equitable, or of the estate, whether in fee simple, for life, or for years only; and when the homestead is in a city or town, the limitation being determined by value, and not by the dimensions of a lot as designated by the map or plat, it may consist of a lot held under lease, and an adjoining lot held by fee-simple title, when both together constitute the homestead and its appurtenances.

3. *Same; as against mechanic's lien for work done, or materials furnished.*—A claim of homestead exemption can not be asserted against a mechanic's lien for work done or materials furnished (Const. Ala. Art. x, § 4; Code, § 2822), whether the lien be created by contract, or arise under statutory provisions; but, if the work be done, or the materials furnished, on the personal security of the debtor alone, it can not prevail against the claim of exemption.

4. *Same; as against vendor's lien for purchase-money.*—A claim of homestead exemption can not prevail against a vendor's lien for the unpaid purchase-money, though it may be asserted against a third person who, at the personal request of the debtor, has paid the purchase-money for him; yet, if the debtor had but an equitable title, and executed an informal mortgage on the homestead to secure the repayment of the purchase-money advanced for him, and the mortgagee afterwards acquired the legal title, a court of equity will not cancel the mortgage, and decree a divestiture of the legal title, without requiring the repayment of the purchase-money so advanced.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 6th November, 1886, by Thornton Tyler, against John F. Jewett; and sought, principally, the cancellation of a mortgage on a small lot in the city of Mobile, which the complainant and his wife had executed to said defendant, but which had no certificate of acknowledgment by the wife on examination separate and apart from her husband; also, to cancel a lease of the lot, which the complainant had accepted from the defendant

after a sale under the power contained in the mortgage, and a quit-claim deed for the premises, which the defendant had procured, after the sale under the mortgage, from one Robert W. Hallett. The bill alleged that the lot, with its appurtenances, constituted the homestead of the complainant and his family at the time the mortgage was executed, and that he was still in possession, occupying and claiming the premises as his homestead; and he asked the cancellation of the mortgage, on the ground that it was a cloud on his title. The bill alleged that, at the sale under the mortgage, the defendant himself became the purchaser, though an agent; that the lease, by which the complainant acknowledged the defendant as his landlord, and promised to pay rent, was executed under a mistake as to the facts, and was procured by threats and duress; and that the quit-claim deed was executed by Hallett for the benefit of the complainant, for the purpose of perfecting, as he supposed, the complainant's title to the property under his original purchase.

The complainant bought the lot, in 1867, from one Marston, at the price of $1,200, of which $150 was paid in cash, with the residue to be paid in monthly installments of $50 each; and he received a bond for titles from Marston, and was placed in possession. The lot was at that time vacant, and the complainant was living on an adjoining lot, which he leased. Soon after his purchase, he erected a stable and other outhouses on the lot, removed the fence between it and the leased premises, and used and occupied the two together, as he alleged, as his homestead. Some time afterwards he commenced to erect a dwelling-house on the lot, being aided by the defendant, who furnished money and materials. On the 29th July, 1880, the house being still unfinished, and $100 of the purchase-money being still unpaid, the parties entered into an agreement which was reduced to writing in the form of a mortgage, between the complainant and his wife as parties of the first part, and the defendant as party of the second part; the following being the material stipulations : "*Whereas* the parties of the first part are justly indebted to the party of the second part in the sum of two hundred and twenty dollars, and have contracted and by these presents do contract with the said John F. Jewett to finish and complete a dwelling-house now partly constructed on the lot of land described in this deed, the cost of which is to depend on the amount of work to be done by the parties of the first part; it being now agreed that only such work shall be done as will render it fit for occupation as a dwelling-house, namely," specifying the work in detail; " it being the purpose of the parties to

[Tyler v. Jewett.]

expend only a sufficient amount of money to make the house habitable for the present, leaving it to be finished at some future time, when the parties of the first part shall have the money to pay for the work, but may be required to finish the house. In consideration of the foregoing, the parties of the first part agree to occupy the house as a dwelling, as soon as the above mentioned work is done, and to pay to the said party of the second part the sum of seven dollars per month, until they shall have paid him for all moneys expended by him in the building of said house, and for insurance, taxes and repairs, should any be necessary. *Now this indenture witnesseth*, that the said parties of the first part, for the better securing the amount already expended in work on the said building, insurance or taxes paid, or in any other manner for the improvement of the premises, according to the true intent and meaning of this contract, have given, granted," &c. "*Provided* always, that these presents are upon this express condition, that the said parties of the first part, their heirs," &c., "shall pay to the party of the second part, his heirs," &c., "the above stated sum of money already advanced, and all such sums as he may advance in pursuance of this contract, upon the terms above stated, including insurance, taxes and interest, then this deed shall be void; otherwise, and if default shall be made in the proper payment of said sums of money," &c., the party of the second part may enter and sell.

The mortgage was signed by the complainant and his wife, by mark only, and was acknowledged by them before a justice of the peace; but there was no acknowledgment by the wife on examination apart from her husband. A few days afterwards, on the 2d August, 1880, on request of the complainant, the defendant paid to Marston the $100 balance of purchase-money then remaining unpaid. On the 7th April, 1884, he sold the premises under the power in the mortgage, J. F. Mahon becoming the purchaser at the price of $570; and on the next day, April 8th, 1884, Mahon conveyed by quit-claim, on the same consideration as recited, to the defendant. After the sale of the premises under the mortgage, the complainant continued in possession as before, though there was a recovery against him in ejectment at the suit of the defendant, and also a recovery in an action of unlawful detainer; but the record of these actions, though mentioned in the note of the testimony, and also in the chancellor's decree, is not copied into the transcript. On the 28th June, 18-6, the complainant signed a written lease of the premises, acknowledging the defendant as his landlord, and promising to pay rent at the rate of $5.00 per

month. On the 21st August, 1886, the defendant procured, through his agents, a quit-claim deed from Hallett; but said Hallett testified, as a witness for the complainant, that he signed the deed for the benefit of the complainant, on the representation that a former deed had been lost, and only for the purpose of helping the complainant.

The chancellor overruled a demurrer to the bill for want of equity, and, on final hearing on pleadings and proof, set aside the sale under the mortgage ; but he further held that the mortgaged premises did not constitute a part of the complainant's homestead at the time it was executed, and, that it was a valid security for the unpaid balance due on the mortgage debt.

From this decree each party appeals, and each assigns errors; the complainant, because the chancellor refused to cancel and set aside the mortgage ; and the defendant, because he overruled the demurrer to the bill, and because he set aside the sale under the mortgage.

W. E. RICHARDSON, for the complainant below.—(1.) The bill contains equity, because the lease accepted by complainant would (and did) estop him from disputing the defendant's title as landlord ; and because the deed from Hallett, until set aside in equity, would estop him from defending an action of ejectment at law. (2.) At the time the mortgage was executed, the complainant was in possession of the premises as a part of his homestead, using and occupying it as such so far as it was capable of use and occupation ; and it did not exceed, either in value or quantity, the maximum allowed by constitutional and statutory provisions.—*Blum v. Carter*, 63 Ala. 235–40 ; *Brown v. Martin*, 4 Bush, 47 ; *Neal v. Coe*, 35 Iowa, 407 ; *Grozholz v. Newman*, 21 Wall. 481 ; *Fogg v. Fogg*, 40 N. H. 282. (3.) As an alienation of the homestead, the mortgage is void.—Code, § 2822 ; *McGuire v. Van Pelt*, 55 Ala. 344 ; *Holso v. Seawright*, 65 Ala. 431 ; *Miller v. Marx*, 55 Ala. 338 ; *Scott v. Simon*, 70 Ala. 352 ; *Alford v. Lehman, Durr & Co.*, 76 Ala. 526. (4.) The sale under the power in the mortgage was properly set aside, because the mortgagee was himself the real purchaser.' *Foxworth v. White*, 72 Ala. 224 ; *Gunn v. Brantley*, 21 Ala. 633 ; 2 Brick. Digest, 501, §§ 158–62.

R. T. ERVIN, *contra.*—(1.) If the mortgaged premises constituted the complainant's homestead, as the bill alleges, then it is void at law, and the bill ought to have been dismissed for want of equity.—*Jones v. DeGraffenreid*, 60 Ala. 145. (2.) But the mortgage recites that the house on the

[Tyler v. Jewett.]

premises was neither completed nor occupied; and the proof shows, not only that this is true, but also that the complainant was, at the time, occupying and living in a house on an adjoining lot, which he held under a lease. When the homestead is in a city or town, the exemption is limited to the lot occupied; and the debtor can not, while actually occupying one lot, claim an exempt homestead in another. (3.) If the claim of homestead exemption can be sustained at all, it can not prevail against the defendant's debt for work and labor done, nor against his claim for the purchase-money advanced by him.

CLOPTON, J.—Each party takes an appeal from a decree rendered in a suit instituted in the Chancery Court by Thornton Tyler, against John F. Jewett. The purposes of the bill are, to have declared void and cancelled a mortgage, executed by complainant and his wife to defendant, on a lot in Mobile, and, incidentally, to annul a lease of the lot, and to divest defendant of the legal title. The right to relief is based on the ground, that the lot mortgaged was the homestead of complainant, and the insufficiency of the certificate of acknowledgment of the wife's signature and assent to constitute a valid alienation. The main contention between the parties may be resolved into the inquiry, whether the complainant had, at the time of its execution, a claim of homestead which he is entitled to assert against the mortgage.

It is insisted, that, conceding the mortgage to be invalid, the bill can not be maintained, to remove a cloud from complainant's title, for the reason, that after foreclosure by sale the defendant brought ejectment, and recovered possession of the lot before the bill was filed ; and *Jones v. De Graffen-reid*, 60 Ala. 145, is cited as authority in support of this proposition. In that case, it was held, that when a purchaser of the homestead at execution sale brought an action at law, and recovered possession of the premises, the principles on which equity intervenes to remove a cloud from the title do not apply, because the homestead, the claimant having the legal title, is a legal seizin, and will defeat ejectment—the remedy at law is complete and adequate. In the present case, the complainant had only an equitable title when he gave the mortgage. The defendant afterwards acquired the legal title from a third person, in whom it was vested, against which a homestead, resting on an equitable title, will not avail in an action at law. In such case, there is a special, equitable reason, why the powers of a court of equity should be invoked.

7

Complainant contracted to purchase the lot in controversy in 1867, paying a part of the purchase-money, and receiving from his vendor a bond for title. Under the contract of purchase, he entered into possession of the land, and thereafter erected thereon some out-buildings, such as a store-house, bath-house, and stable. At the time of the purchase, he was occupying and residing on an adjoining lot, which he previously leased, in connection with which he used the lot in question for domestic and family purposes ; and continued to rent from time to time, and thus occupy and use both lots, until about 1882, when he moved into a building then recently erected on the lot purchased. The mortgage was executed July 29, 1880. The right of exemption, arising on these facts, does not involve the ascertainment of a clearly defined intention of present residence, manifested by acts of preparation without unnecessary delay, the equivalent of actual occupancy. The direct question is, whether, under the exemption laws, a homestead can include two or more parcels of land, the estate or interest in which is of different degree and quality, and held by titles of different kind and dignity.

It was not contemplated, nor intended, by the term " owned," as employed in the constitution, that absolute ownership, or an estate in fee, should be essential to a valid exemption of real property from the payment of debts. There is no limitation to any particular estate, either as to duration, quantity, or extent. It is the land on which the dwelling-place of the family is located, used, and occupied as a home, which the constitution and statutes protect, however inferior may be the title, or limited the estate or interest; not because there is an estate or interest in the land, but because it is the homestead, the dwelling-place, and its appurtenances. Protection of the estate or interest, of whatever dignity or inferiority, is incidental to the preservation of the homestead. The statute, adopting this construction of the constitution, expressly declares : "Such homestead exemption shall be operative to the extent of the owner's interest therein, whether it be a fee or less estate." An absolute or qualified ownership—a fee simple, or equitable estate, or for life, or for years—meets the requirements of the constitution and statutes, and effectuates their policy and purposes. Whatever right or claim the debtor may have, which may be subjected to the payment of debts, or is capable of alienation, falls within their operation, and the homestead exemption may be successfully claimed, except as against the true owner, or a superior title. The uses to which the land is devoted, and not the quality and quantity

[Tyler v. Jewett.]

of the estate, impress the characteristics of a homestead. The lot leased by complainant was his homestead at the time he contracted to purchase the lot in controversy, and continued such so long as he continued to lease, use, and occupy it as the dwelling-place of himself and family. *Watts v. Gordon,* 65 Ala. 546; Thomp. on Homestead Exemptions, § 176.

It is insisted, however, that complainant could not impress the character of a homestead upon the lot in question, until he abandoned the leased house and lot. It does not necessarily follow that complainant should actually have a dwelling on the lot purchased, in which his family resided, in order to include it in his homestead, and as part thereof. The language of the constitution and statutes—" any lot in a city, town, or village "—does not restrict the homestead to one lot or piece of land. Such would be a narrow and strict interpretation, not in harmony with the spirit or policy of the exemption laws, nor with the settled rule, that they shall be liberally construed to accomplish their benevolent objects. A lot, as lots may be surveyed and numbered, or otherwise designated, in the plan or map of the city, town or village, was not contemplated. When the homestead is *urban,* the limitation relates to the value, and not to the number or extent of the lots. Two or more adjoining lots may be occupied and used as a homestead, and for this purpose constitute one lot or tract. Where a person owns a lot, on which is the dwelling-place of himself and family, he may acquire an abutting lot, and impress the character of the homestead, by devoting it, in connection with his dwelling, and as appurtenant thereto, to the appropriate and requisite occupancy and uses, if the limitation as to value is not exceeded.—*Englehardt v. Shade,* 47 Cal. 627; *Walters v. People,* 65 Amer. Dec. 730; *Wassel v. Tunnah,* 25 Ark. 101.

We have, therefore, as postulates, that the right to homestead exemption does not depend on the nature of the title, or the degree or character of the estate, but will be determined by occupancy and uses; and that a homestead may consist of two or more adjoining pieces of lands, so connected, occupied and used, as to constitute, in contemplation of law, one tract. The logical and obvious consequence is, that it is not essential that the several lots or pieces shall be held by the same title, or the same kind of title. The policy of the constitution and statutes is not restricted to the mere preservation of homesteads already acquired, but extends to encouraging their acquisition, in order to prevent and avoid the unmixed evil and misfortune of a home-

less population; "and if we look beyond the essential characteristics of a homestead —actual occupancy as a home, a dwelling-place—and enter upon an inquiry as to the tenure upon which the right of occupancy depends, we are sure to contravene this policy."—*Watts v. Gordon, supra.*   There are cases, and the present case seems to be one, where the head of a family, for want of means, is unable to purchase a lot, and, at the same time, construct thereon necessary buildings, but who has means sufficient to procure the ground, and wait further preparation, until by energy, industry, and economy, he is able to erect a dwelling and other houses.   In such case, we see no sufficient reason why in the meantime he may not lease adjoining premises having a dwelling-place, where he may reside, and, by appropriate and requisite occupation and uses of the land purchased as appurtenant thereto, impress the essential characteristics, and constitute it a part of his homestead, in the same manner and to the same extent as if he had acquired both lots by purchase, so far as respects its alienation or subjection to the payment of debts.   The preservation of such part of the homestead so created and constituted is within the purview of the constitution and statutes, and in furtherance of their purposes and policy.   On the facts shown by the record, the lot in controversy was a part of the homestead of complainant when the mortgage was executed, which the constitution and the statutes protect.

But it appears from the evidence, and the recitals of the mortgage, that it was given as security, not only for a past indebtedness, but also for the work and materials to complete a dwelling on the lot partly constructed.   The constitution expressly provides, that the provision exempting the homestead shall not be so construed as to prevent a mechanic's lien for work done on the premises; and the statute adds, "materials furnished."—Con. of Ala., Art. x, § 4; Code of 1876, § 2821.   If the work is done, and the materials furnished, on the personal security of the debtor, the constitutional and statutory prohibition does not apply; but, if there be a lien, whether created by contract, or arising under the lien laws, such lien constitutes the claim a privileged debt, against which the right of exemption can not be asserted.   The expression, "a mechanic's lien for work done on the premises," does not refer to the manner in which the lien may arise, but to the character of the debt, a lien for which will be superior to the right of homestead exemption. The object for which the debt is contracted is the controlling consideration, founded in natural justice, which denies the debtor the right and privilege to retain and enjoy the

[Tyler v. Jewett.]

benefits of labor and materials necessary to build for him and his family a dwelling-place, and hold it exempt from payment for such labor and materials—for its erection on the security of the lien. Equity will not permit complainant to have the mortgage cancelled, without paying for the work done and materials furnished, after its execution, in finishing the house.

It further appears that, by request of complainant, defendant paid his vendor one hundred dollars in discharge and satisfaction of the purchase-money of the lot. The generally accepted rule is, that the lien of a vendor for the purchase-money is an incumbrance upon the homestead, against which the exemption does not prevail. Under our decisions, however, the payment of the purchase-money by request of complainant did not operate to transfer the original demand to defendant, but extinguished it, and created a new liability, defendant becoming a new and original creditor.—*Chapman v. Abraham*, 61 Ala. 108. Whether or not, under the circumstances of this case, the complainant having only a bond for title, and the defendant having obtained the legal title, the amount should be regarded as purchase-money as against the claim of exemption, it is unnecessary to decide. One purpose of the bill is to divest the legal title, which defendant obtained from Hallett, to whom complainant's vendor had conveyed it, and vest it in complainant. The mere cancellation of the mortgage will not produce this result. Possession of the legal title arms defendant with a legal advantage, which compels complainant to resort to a court of equity. An inflexible rule is, whoever seeks equity must do equity.—*Smith v. Murphy*, 58 Ala. 630. In this aspect of the case, the question of homestead *as such* is not involved. It would be inequitable to deprive defendant of the advantage of the legal title, without requiring repayment of the purchase-money paid by him, only by reason of which payment complainant would be entitled to demand it of his vendor. The rule is analogous which governs when a mortgagor seeks to redeem.

It may be said, that the bill contains no offer to do equity; but no objection having been made in the Chancery Court because of this defect, we shall not take notice of it on this appeal. A proper adjustment of the equities of the parties requires the ascertainment of the amount due and unpaid for work done and materials furnished after the execution of the mortgage, in finishing the dwelling, and for the amount of the purchase-money paid by defendant. As to all other indebtedness included, the mortgage is invalid.

[Jones v. McPhillips.]

In taking the account, prior payments should be applied to the antecedent indebtedness. Under the circumstances, the mortgage being void as to part of the debt, there is no error in setting aside the foreclosure sale; but the chancellor erred in decreeing that the mortgage is a valid security for the entire mortgage debt unpaid.

The decree is reversed on the appeal of complainant, and defendant takes nothing by his cross-appeal.

