**In re Hubert Collins RESTER, Debtor.**

**Civ. A. No. 83–1383–H.**

United States District Court,
S.D. Alabama, S.D.

Sept. 7, 1984.

Neal E. Buchman, Mobile, Ala., for appellant.

Robert H. Allen, Mobile, Ala., for trustee.

## ORDER

HAND, Chief Judge.

### I

This cause comes before this Court on appeal from the United States Bankruptcy Court for the Southern District of Alabama. This Chapter 7 case originated with the filing of a voluntary petition by the debtor on April 14, 1983. Appellant-debtor complains of two actions by the Bankruptcy Court. First, appellant contends that the Bankruptcy Court erred in disallowing the homestead exemption claimed by appellant. Second, appellant claims error in the Bankruptcy Court's application of Alabama's split exemption scheme [1] to appellant's personal property exemption. As a subdivision of this contention, appellant complains of the Bankruptcy Judge's order that certain property jointly owned by the debtor and his former wife be sold and the proceeds divided.

### II

The bankruptcy judge ruled that the debtor was not entitled to claim a homestead exemption. Finding that the debtor was not *occupying* the house *and,* more importantly, had contracted to sell it, the judge ruled that the debtor had abandoned the homestead.

The house in question is one that was owned jointly by the debtor and his wife, now divorced, located at 919 Seacliff Drive, Fairhope, Alabama, 36532. Since Alabama has opted out of the federal exemptions scheme,[2] the question of abandonment by the debtor and concomitant loss of the exemption is answered by reference to Alabama law. Bankruptcy Reform Act § 522(b), 11 U.S.C. § 522(b) (1979).

The crux of the abandonment issue is the effect of the sales contract that had been entered into at the time of the filing of the bankruptcy petition. If the contract to sell is not equivalent to abandonment, then the debtor's mere absence from the premises is irrelevant, as he obviously was *occupying* the residence with his possessions.

The learned bankruptcy judge based his decision that the debtor could not claim the homestead on the case of *In re Brasington,* 10 B.R. 76 (Bankr.M.D.Ala.1981). In that case the debtor had contracted to sell the house and had moved to another location. It was held that this prevented the debtor from claiming the former home under the Alabama exemption law. A similar result seems to be impelled by applying *Brasington* directly to the instant case. The debtor here had contracted to sell the homestead, and thereby promised to move and live elsewhere. However, two contradicting considerations must be examined to determine whether *Brasington* applies to this case.

First, as has been noted, the debtor, having contracted to sell the house, obviously cannot continue to reside there. Although Alabama cases speak of protecting the interest of a person in his homestead to the

---

1. *Ala.Code* 6–10–1 (1975); §§ 6–10–2, 6 (Supp. 1983).

   Prior Alabama law allowed an exemption of $2,000.00 for homestead, § 6–10–2 (1975), and $1,000.00 for personalty, 6–10–6 (1975). The

new law, codified as stated above, was enacted by 1980 Ala.Acts, No. 80–569, p. 879, §§ 2–3.

2. *Ala.Code* § 6–10–11 (Supp.1983).

extent of that interest,[3] in this case the debtor was retaining no interest whatsoever.

The Alabama exemption, protecting the interest of a person in his residence, applies because of the use to which the land is put, not because of the· fixtures on it or the quality of the debtor's interest. *Moseley v. Neville*, 221 Ala. 429, 129 So. 12 (1930); *Bailey v. Dunlap Mercantile Co.*, 138 Ala. 415, 35 So. 451 (1903); *Griffin v. Chattanooga S. Ry.*, 127 Ala. 570, 30 So. 523 (1900); *Tyler v. Jewett*, 82 Ala. 93, 2 So. 905 (1887); *Watts v. Gordon*, 65 Ala. 546 (1880). As a practical matter, the limited exemption of $5,000.00 will only protect a debtor's equity in his home. Nevertheless, if the debtor uses the property as a home for himself, he is entitled to claim it as exempt, if only to the extent of that equity.

If the debtor's equity in his home is greater than the allotted exemption, then from a practical viewpoint, the $5,000.00 is all that the debtor receives if the trustee sells the house. This is the second consideration. It raises the query, if the debtor is only to receive $5,000.00, not an actual piece of realty to use as a home, why should it matter whether the trustee sells the house or the debtor does? The end result is identical: the debtor has $5,000.00 insulated from the claims of creditors. This amount could then be applied toward a new homestead. The problem with this approach is that, while relying on the substantive result of the transaction, it allows the debtor to grasp with one hand what he releases from the other. Thus, the debtor can put his home on the market, so that a good price might enable him to avoid bankruptcy, and yet claim his homestead exemption if he only contracts for a lesser amount. Alabama's homestead exemption "protects the roof that shelters and the land used in connection therewith for the comfort and sustenance of the family, and cannot be converted into a shield for investments from which rents and profits are to be derived." *Moseley v. Neville*, 221 Ala. 429, 129 So. 12, 14 (1930).

▇ ·Furthermore, Alabama law allows a person to claim property as exempt from the moment of the contract to purchase. *Tyler v. Jewett*, 82 Ala. 93, 2 So. 905 (1887). Logically, this principle requires the conclusion that the homestead cannot be claimed once a contract for sale is effective. A contract for sale of land is enforceable by an action for specific performance. The vendee, upon the contract becoming enforceable, gains the right to claim the purchased property as exempt. While it is conceivable that two or more families might own undivided interests in realty such that each could claim a homestead exemption, if one family owns the entire interest and contracts to convey all of that interest, they also convey the right to claim a homestead exemption in the property. *Tyler v. Jewett*, *supra*. Therefore, the ruling of the bankruptcy judge on this point is AFFIRMED.

### III

▇ In this case the learned bankruptcy judge was confronted with the issue of allotting an exemption in personal property. In Alabama, the exemption of property is determined by state law.[4] As the

---

3. *E.g., Bailey v. D.R. Dunlap Mercantile Co.*, 138 Ala. 415, 35 So. 451 (1903); *Tyler v. Jewett*, 82 Ala. 93, 2 So. 905 (1887); *Watts v. Gordon*, 65 Ala. 546 (1880).

4. 11 U.S.C. § 522(b) (1979) allows a state to "opt out" of the federal exemption scheme established by section 522(d).

   (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate either—(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph 2(A) of this subsection specifically does not so authorize; or, in the alternative, (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place.

   Pursuant to this provision of the Bankruptcy Code, the Alabama legislature withdrew from the federal exemption scheme:

amount of property that a debtor may exempt has recently been raised in Alabama,[5] the question arises as to whether a particular debtor may claim the old exemption or the new exemption. Ordinarily, the exemption to be claimed would simply depend upon the date of the filing of the bankruptcy petition. However, section 6–10–1 of the Code of Alabama states: "The right of homestead or other exemption shall be governed by the law in force when the debt or demand was created."

In prior cases before this Court, section 6–10–1 has been applied to prevent a debtor from claiming the *new* exemption if debts were incurred before the law was changed. In *First National Bank of Mobile v. Norris*, 701 F.2d 902 (11th Cir.1983), the Court of Appeals for the Eleventh Circuit limited a debtor to the old exemption. *Norris* involved *only* the homestead exemption provided by section 6–10–2 of the Code of Alabama.[6] The new exemptions were held to be prospective only.[7] 701 F.2d at 905. Moreover, in *Norris* there were no creditors who had loaned money to the debtor after the new exemption was passed.

Thus, no debts were created against which the debtor could claim a $5,000.00 exemption. In particular, the question of a "split exemption" was not posed to the court.

Since the decision in *Norris* there have arisen several cases in which the so-called "split exemption" question has arisen.[8] The Honorable Virgil Pittman, examining the Bankruptcy Court's action in allocating a personal property exemption, applied *Norris* to those situations. Whereas the Bankruptcy Court's approach was to restrict the debtor to a $1,000.00 exemption if there were debts incurred before the new law was enacted on May 19, 1980, Judge Pittman held that some apportionment was necessary. In *Goldsby v. Stewart*, 46 B.R. 692 (S.D.Ala.1983), Judge Pittman wrote:

> The Bankruptcy Court has held that since *some* of the debts scheduled by the debtors were incurred prior to May 19, 1980, the debtors are limited to those exemptions allowed prior to that date, and the increased exemption allowances contained in Act. No. 80–569 do not apply. (Emphasis added). This conclusion,

---

5. *See* 1980 Ala.Acts No. 80–569, p. 879 § 3, *codified at Ala.Code* § 6–10–6 (Supp.1983). *Cf. Ala. Code* § 6–10–6 (1977).

6. The homestead of every residence of this state, with the improvements and appurtenances, not exceeding in value $5,000.00 and in area 160 acres, shall be, to the extent of any interest he or she may have therein, whether a fee or less estate or whether held in common or in severalty, exempt from levy and sale under execution or other process for the collection of debts during his or her life and occupancy and, if he or she leaves surviving him or her a spouse and a minor child, or children, or either, during the life of the surviving spouse and minority of the child, or children, but the area of the homestead shall not be enlarged by reason of any encumbrance thereon or of the character of the estate or interest owned therein by him or her.

*Ala.Code* § 6–10–2 (Supp.1983). The previous law placed a limit of $2,000.00 on the value of the exemption. *Ala.Code* § 6–10–2 (1975).

7. The Norris court cited *United States v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235, (1982), that held the debtor's avoidance powers under 11 U.S.C. § 522(f)(2) to *not be retroactive*. This case's rationale is not applicable to the question of whether a state can increase the allowed exemption. Avoidance powers involve the abrogating of a contract. The exemption of property is an act of the State's police power that does not affect the debtor's relationship with an unsecured creditor any more than the incurring of more debt by the debtor. Both actions dilute the creditor's recovery, but he extends credit knowing each could occur. *See infra* note 12.

8. *See, e.g., Gooden v. Stewart*, No. 81–1065–P, slip op. (S.D.Ala. March 25, 1983); *Goldsby v. Stewart*, 46 B.R. 692 (S.D.Ala.1983); *Flowers v. Stewart*, No. 82–1149–P, slip op. (S.D.Ala. March 25, 1983); *Pryor v. Stewart*, No. 82–1117–P, slip op. (S.D.Ala. March 25, 1983).

In cases instituted under the provisions of Title 11 of the United States Code entitled "Bankruptcy," there shall be exempt from the property of the estate of an individual debtor only that property and income which is exempt under the laws of the state of Alabama and under federal laws other than Subsection (d) of Section 522 of said Title 11 of the United States Code.

*Ala.Code* § 6–10–11 (Supp.1983).

the court holds, is incorrect as a matter of law. Under Alabama law, the applicable exemption is determined by the statutes in force when the debt was created. Ala. Code § 6–10–1 (1975). Therefore, it follows that to limit the debtors to the lesser, pre May 19, 1980 personal property exemption when other debts scheduled by the debtor were incurred after May 19, 1980 violates Alabama Code § 6–10–1 (1975).

*Id.,* at 694. Judge Pittman went on to refer to the problems apportionment could possibly cause, but did not articulate any mechanism for resolving those problems. Similarly, in *In re Perine,* 46 B.R. 695 (S.D.Ala.1983), Judge Pittman wrote, "the pre May 19, 1980 exemptions apply to the debts incurred prior to May 19, 1980, and the post May 19, 1980 exemptions apply to the debts incurred after that date." *Id.,* at 697. Again, no method of apportionment was prescribed.

In the instant case the Bankruptcy Court has not engaged in any apportionment. In-stead, the approach taken was to allow the debtor a $3,000.00 exemption, but then allot the excess of $2,000.00 over the old exemption to any creditors with pre May 19, 1980 claims. If such claims totalled less than $2,000.00, any property remaining could be claimed by the debtor.

Indeed, in this case the Bankruptcy Court has allowed even less of an exemption to the debtor. The facts are as set out below.

The debtor owned a certain amount of *unencumbered* personal property. Of this, property worth $1,141.00 was owned outright by the debtor.[9] Property having a value of $1,070.00 was owned jointly by the debtor and his former wife.[10] The debtor's interest was a one-half interest, valued at $535.00. Finally, ten items of property were owned jointly by both the debtor and his former wife. The valuations presented by the debtor were contested by the trustee through the testimony of debtor's former wife.[11]

9. As stated in the debtor's Schedule B–4, the list of items and values is as follows:

| | | | |
|---|---|---|---|
| Dog | $ 10.00 | Windsurfer | $ 50.00 |
| Cash | 10.00 | Binoculars | 5.00 |
| Bank Deposits | 100.00 | Boating Gear | 20.00 |
| Stereo | 50.00 | Bar-B-Que Grill | 5.00 |
| Sofa, loveseat | 50.00 | Scuba Gear | 150.00 |
| Two end tables, | | RDF | 25.00 |
| coffee table | 50.00 | Bicycle | 20.00 |
| Two lamps | 10.00 | 100 shs. of stock | |
| Two cameras | 65.00 | Jubilee, Inc. | 250.00 |
| Portable phone | 10.00 | Ice chest | 5.00 |
| Fishing gear | 15.00 | 357 Magnum pistol | 75.00 |
| Mini 14 SS Rifle | 50.00 | 38 Pistol | 75.00 |

The Bankruptcy Court's list of property also included a circular saw, electric drill and miscellaneous tools totalling $50.00. Although these items do not appear on the debtor's schedules, their presence is admitted in the debtor's brief on appeal. Also, the Bankruptcy Court assigned a value of $1.00 to the dog. The final total comes to $1,141.00.

10. The property valued at $1,070.00 was listed by both the debtor and the Bankruptcy Court as follows:

| Item | Total Value | Debtor's Interest |
|---|---|---|
| Washer | $100.00 | $50.00 |
| Dryer | 100.00 | 50.00 |
| Microwave | 50.00 | 25.00 |
| VCR | 400.00 | 200.00 |
| Soft-sided luggage | 20.00 | 10.00 |
| Love seat | 150.00 | 75.00 |
| Miscellaneous Bric-a-brac | 100.00 | 50.00 |
| End table | 50.00 | 25.00 |
| Coffee table | 100.00 | 50.00 |
| TOTAL | $1,070.00 | $535.00 |

11. The ten items, with the disputed values, are set out in the following table.

| Item | Debtor's Valuation | Debtor's ½ Interest | Wife's Valuation | Debtor's ½ Interest |
|---|---|---|---|---|
| Wicker Furniture | $ 70.00 | $350.00 | $1,000.00 | $ 500.00 |
| 19″ Zenith TV | 150.00 | 75.00 | 300.00 | 150.00 |
| 10″ Magnavox TV | 100.00 | 50.00 | 350.00 | 175.00 |
| Telescope | 100.00 | 50.00 | 500.00 | 250.00 |
| Wicker Dining Room Set | 200.00 | 100.00 | 600.00 | 300.00 |

The Bankruptcy Court proceeded to allocate the property in the following manner. The $1,141.00 of individually owned property, plus the $535.00 interest of the debtor in joint property, was allocated to the debtor if he paid $1,211.00 into court to cover the amount by which this "exempt" personalty exceeded the old Alabama exemption. The $1,211.00 figure was derived by subtracting $1,000.00, the exemption under the old law, from $2,211.00, which is the sum of $1,141.00 and $1,070.00. However, the $1,070.00 is the total value of the property, not the value of the debtor's interest in the ·joint property.

As neither the debtor nor the trustee presented the opinion of a professional appraiser on the value of the *disputed* property, the Bankruptcy Court ruled that the ten items, listed in footnote 11, be sold, the proceeds to be distributed to the trustee and to the wife. The trustee was ordered to hold any amounts up to $1,324.00 representing the debtor's interest. This amount is reached by subtracting $1,676.00 from $3,000.00.

The Bankruptcy Court, therefore, instead of *apportioning* the exemptions between "old" and "new" creditors, is simply paying off "old" creditors to the extent of $2,000.00. Any property claimed as exempt above the old $1,000.00 exemption is paid into court and held until pre May 19, 1980 creditors file a claim for it. In this case, the debtor would be required to pay over $2,535.00 ($1,211.00 + $1,324.00), in order to retain exempt property worth $465.00 ($1,676.00 − $1,211.00). This scheme is not *apportionment*. Instead, the Bankruptcy Court is paying off pre May 19, 1980 creditors while not affording the debtor any advantage to which the new Alabama law entitles him.

The question now before the Court is whether to devise a scheme by which this and future cases may be properly handled by the Bankruptcy Court through *apportionment*. The alternative is to reject the split exemption scheme altogether. This case, unlike *Norris*, deals only with how much *unencumbered* personal property may be claimed as exempt. There is no issue herein involving the ability of the debtor to avoid liens held by secured parties. Rather, the question involves *unsecured creditors without priority*. These creditors will get almost nothing from a bankrupt's estate. The Bankruptcy Court's present approach establishes a priority system based on the fortuitous date selected by the Alabama legislature to improve the lot of bankrupts by increasing the Alabama exemptions. Creditors from before this date are granted priority, in that they are paid to the extent the debtor has exempt property worth more than $1,000.00 but less than $3,000.00. The intent of Congress in enacting the Bankruptcy Code was to give all individual debtors a fresh start, *see* S.Rep. No. 989, 95th Cong., 1978 U.S.Code Cong. & Ad.News 5787, 5792–93; H.Rep. No. 595, 95th Cong., 1978 U.S.Code Cong. & Ad.News 5787, 5966, not allow some creditors to profit at the expense of the debtor's exemptions. Strictly applied, *Norris* does not mandate the Court's holding in this case that exemptions are dependent on the date on which the debt was incurred. There are at least three arguments for rejecting *Norris'* application in this situation. First, the bankruptcy courts in the other federal districts in Alabama are allowing the debtor a full $3,000.00 exemption in situations like this one. Thus the interest of uniformity in the bankruptcy laws, inclines the Court to reject split exemptions. More important is

| Item | Debtor's Valuation | Debtor's ½ Interest | Wife's Valuation | Debtor's ½ Interest |
|---|---|---|---|---|
| 3 Paintings | $ 200.00 | $100.00 | $1,100.00 | $ 500.00 |
| Oriental Rug | 200.00 | 100.00 | 2,000.00 | 1,000.00 |
| Small TV chest | 50.00 | 25.00 | 400.00 | 200.00 |
| Tall TV chest | 100.00 | 50.00 | 1,000.00 | 500.00 |
| 3 lamps | 120.00 | 60.00 | 300.00 | 150.00 |
| TOTAL | $1,920.00 | $960.00 | $7,550.00 | $3,775.00 |

Congress' scheme for allowing bankrupts to salvage a limited amount of personal property from the financial debacle. Section 522(b) authorizes an "individual debtor" to "exempt from *property of the estate*", 11 U.S.C. § 522(b) (1979) (emphasis added). The estate is created by the filing of a bankruptcy petition. 11 U.S.C. § 541(a) (1979). Thus, the appropriate date for determining exemptions is the date of filing, not the date of indebtedness.[12] Use of the latter time creates confusion in a process intended to simplify financial problems.

Finally, it is evident from the legislative history that Congress intended some equitable amount of property to be exempt. The "opt-out" provision of section 522(b) does allow states to set exemptions based on local conditions and circumstances. The state exemption need not be identical to the federal exemptions in section 522(d). *See, e.g., Rhodes v. Stewart*, 705 F.2d 159 (5th Cir.1983). It is argued that the state exemption must not be set so low as to make a mockery of the "fresh start" intended by Congress. *See, e.g., Cheeseman v. Nachman*, 656 F.2d 60 (4th Cir.1981). There is some reasoning that Congress did not merely defer completely to the states on exemptions.[13] Comporting with this rationale, the low exemptions available under Alabama law before May 19, 1980 would not meet the needs of the present bankruptcy system.[14] It is arguable therefore that construing the new Alabama law as *not* completely repealing Ala.Code § 6–10–1 (1975) would result in a conflict between the Alabama exemption law and the superior federal Bankruptcy Code. To prevent such a conflict it would be necessary to hold that the new Alabama exemptions apply without regard to the date on which the debt was incurred.[15] Such an approach to the Alabama exemption problem cannot now be applied, as prior opinions of the District have concluded otherwise.[16]

The present system by which a debtor loses his exemptions due to pre May 19,

12. *E.g.*, 11 U.S.C. § 522(b)(2)(A) allows the debtor to claim as exempt "property that is exempt under ... State or local law that is applicable on the date of the filing of the petition." This language has been interpreted as requiring exemptions to be allotted by by the state law in force on the date of the bankruptcy petition. *See e.g., In re Zahn*, 605 F.2d 323 (7th Cir.1979) (exemption is determined as of the date of the petition, not the date of indebtedness), *cert. denied* 444 U.S. 1075, 100 S.Ct. 1022, 62 L.Ed.2d 757 (1980); *In re Ageton*, 6 B.R. 727 (Bankr.D. Ariz.1980) (date of filing petition in bankruptcy determines extent of exemption); *In re American Business Machines, Inc.*, 6 B.R. 166 (Bankr. D.Nev.1980) (same); *In re Curry*, 5 B.R. 282 (Bankr.N.D. Ohio 1980) (same). *Cf. Lewis v. Manufacturers National Bank*, 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961) (the right of creditors are ascertained as of the date of bankruptcy); *White v. Stump*, 266 U.S. 310, 45 S.Ct. 103, 69 L.Ed. 301 (1924) (property claimed as exempt must be claimed before filing bankruptcy petition). *But see England v. Sanderson*, 236 F.2d 641, 61 A.L.R.2d 744 (9th Cir.1956) (construing California exemptions to apply as of date of indebtedness); *In re Towers*, 146 F.Supp. 882 (N.D.Cal.1956) (same); *In re Browning*, 13 B.R. 6 (Bankr.S.D.Ala.1981) (Alabama exemptions apply as of date of indebtedness, not date of bankruptcy); *In re Bonant*, 1 B.R. 335 (Bankr.C.D.Cal.1979) (California exemptions applied per date of indebtedness); *In re Russo*, 1 B.R. 369 (Bankr.E.D.N.Y.1979) (where all debts incurred before higher New York exemption, filing of bankruptcy petitions after increase would not allow application of greater exemption). *Cf. Sturgeon v. Steele*, 563 F.2d 1154 (4th Cir.1977) (mandating apportionment between "old" and "new" debts but no method of apportionment devised).

13. Congress recognized that exemptions must not be too much, but that some property is essential to financial resurrection. "[T]he policy of the bankruptcy law is to provide a fresh start, but not instant affluence." S.Rep. No. 989, 95th Cong., 1978 U.S.Code Cong. & Ad. News 5792.

14. *Ala.Code* §§ 6–10–2, 6 (1975) allowed a total homestead and personalty exemption of only $3,000.00. In comparison, the present exemption is $8,000.00, while the federal exemption is approximately $10,000.00. *Cf. Ala.Code* §§ 6–10–2, 6 (Supp.1983) with 11 U.S.C. § 522(d) (1979).

15. Creditors have argued that application of an exemption to pre-existing debts is unconstitutional as an impairment of contract rights. This argument is without merit, however. For a cogent discussion of this issue see *In re Curry*, 5 B.R. 282, 292 (Bankr. Ohio 1980).

16. *See supra* footnote 8 and accompanying text.

1980 debts cannot be retained. Henceforth, the Bankruptcy Court is to allow no pre May 19, 1980 creditor more than a pro-rata share of the property exemptable under the new Alabama law.

In the present case, the debtor has $315,218.84 in unsecured debt. Only one debt pre-dates Ala.Code § 6–10–6, a S.B.A. loan for $2,510.00. This debt represents only .8% of the total unsecured indebtedness. Therefore, this creditor, should any property be available for distribution to the unsecured creditors, would receive only .8% of the total amount distributed. As cogently argued by the debtor in his brief on appeal, the present practice creates a class of super-priority unsecured creditors, which conflicts with the entire bankruptcy scheme enacted by Congress. The "old" creditor is receiving an undeserved windfall at the expense of the debtor who is supposed to be rehabilitated through bankruptcy. This is simply not equitable.

The proper method of apportionment is to distribute the $2,000.00 in exempt property as follows. (Remember that the initial $1,000.00 exempt property need not be apportioned.) The debtor's share of the "new" exemption is to be in proportion to the "new" debts. The "old" creditor's share in property exempt under the new law is not to exceed the proportion that the debt owed to him bears to the total unsecured indebtedness. In this case, the "old" creditor's "share" is

$$\frac{\$2,510.00}{\$315,218.84} = .008 \text{ (approximately)}$$

This share of the $2,000.00 which the "old" creditor is entitled is

$$.008 \times \$2,000.00 = \$16.00$$

This amount, $16.00, is the amount that this creditor would have received had the Alabama legislature not reformed section 6–10–6. Thus this creditor is not prejudiced if the remaining property is exempt.[17] The new creditors, who are owed 99.2% of

the debt are not prejudiced because *as to them* $3,000.00 is exempt anyway. Therefore the debtor in this case is entitled to an exemption of $2,984.00, which represents the old exemption ($1,000.00) *plus* that portion of the increased exemption available against post May 19, 1980 creditors ($2,000.00 – $16.00 = $1,984.00). This method of computing a debtor's exemptions shall apply to any debtor who has not yet had his exemptions finally adjudicated.

## IV

■ The debtor-appellant likewise objected to the Bankruptcy Court's proposed sale of ten items[18] because of the difficulty of valuation and because the debtor's wife had a half interest in them. These items were valued by the debtor at $1,920.00, while the debtor's undivided half-interest was $960.00. In his brief on appeal, the debtor-appellant informed this Court that the divorce court divested the wife of her half interest in these items, and those as to which the value was undisputed, and transferred it to the debtor. Thus the debtor now has property worth $1,141.00, property worth $1,070.00 and ten items whose value the Bankruptcy Court could not determine. As the debtor now owns these items outright, there is no bar to the sale of them. $1,141.00 plus $1,070.00 equals $2,211.00. The debtor is entitled to exempt $2,984.00. $2,984.00 minus $2,211.00 equals $773.00. The debtor may keep the previously valued items worth $2,211.00 *and* is entitled to an additional $773.00 in exempt property. Therefore, the ten items which could not be valued are to be sold by the trustee. The debtor may purchase at this sale. The debtor is to receive $773.00 from this sale, less the value of any item that he should buy at the aforementioned sale. All funds generated from this sale above $773.00 allocated to the debtor are to go to the estate.

---

**17.** Note that no creditor can complain if, after extending *unsecured* credit to the debtor, the debtor incurs further amounts of unsecured debt, while not gaining any property, so as to dilute the original creditor's eventual pro-rata recovery. This is what happened here.

**18.** *See supra* note 11.

## V

In light of the above memorandum, the Court orders as follows. The decision of the Bankruptcy Court denying the debtor a homestead exemption is AFFIRMED. The decision of the bankruptcy judge improperly apportioning the debtor's exemption is VACATED. The order of the Bankruptcy Court ordering that the unvalued items, listed above at footnote 11, be sold is AFFIRMED, the proceeds of said sale to be distributed in accordance with the instructions in this order. This case is REMANDED to the Bankruptcy Court for proceedings not inconsistent with this opinion.

IT IS SO ORDERED.